# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 05-CR-155-001-TCK** |
| | ) | **&** |
| **LISA JEANINE FINDLEY** | ) | **Case No. 06-CR-071-001-TCK** |
| **aka LISA JEANINE SULLINS** | ) | |
| **aka LISA HOLDEN,** | ) | **(UNDER SEAL)** |
| **Defendant.** | ) | |

## ORDER
## ON SUPERVISED RELEASE

COMES NOW DAVID PLUNKETT SENIOR PROBATION OFFICER OF THE COURT presenting an official report upon the conduct and attitude of Lisa Jeanine Findley, who was placed on supervision by the Honorable Terence Kern sitting in the court at Tulsa, Oklahoma, on the 30th day of October 2006, who fixed the period of supervision at sixty months.[1] The Court imposed the following general terms and conditions theretofore adopted by the court at the time of sentencing, and also imposed the following additional conditions of supervision:

1. The defendant shall abide by the "Special Search and Seizure Condition" enumerated in General Order Number 99-14, filed with the Clerk of the Court on July 13, 1999.

2. The defendant shall abide by the "Special Financial Conditions" enumerated

---

[1]
    In November 2005, Findley was indicted for False Statement to Obtain a Bank Loan filed in the Northern District of Oklahoma under Case No. 05-CR-155-001-TCK. She failed to appear on February 7, 2006, for a Pretrial Conference and a warrant was issued. In March 2006, Findley was arrested in Riverside, California, and she was charged by indictment for Failure to Appear filed in the Northern District of Oklahoma under Case No. 06-CR-071-001-TCK. On October 30, 2006, Findley was sentenced to twenty-months in custody of the Bureau of Prisons in Case No. 05-CR-155-001-TCK, to be served consecutively to the six-month period of custody imposed in Case No. 06-CR-071-001-TCK. She was also sentenced to a five-year term of supervised release in Case No. 05-CR-155-001-TCK, to run concurrently with a three-year term of supervised release imposed in Case No. 06-CR-071-001-TCK. On January 25, 2008, Findley was released from the Federal Bureau of Prisons to several state detainers. Findley was released on bond from Rogers County authorities to federal supervision on June 2, 2008. She currently has pending cases in Rogers County for Obtaining Money by Fraud and Intimidating a Witness, filed as Case Nos. CF-2004-489 and CF-2005-22, respectively.

in General Order Number 99-12 filed with the Clerk of the Court for the Northern District of Oklahoma on July 13, 1999.

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT AND FOR CAUSE AS FOLLOWS:

FINDLEY HAS VIOLATED THE FOLLOWING CONDITIONS OF SUPERVISED RELEASE:

I.  **VIOLATION OF MANDATORY CONDITION WHICH STATES:** "... the defendant shall not commit another federal, state, or local crime...."

During the period from or about December 2008 to August 2009, Findley allegedly wrote numerous checks on her personal checking account for cash or merchandise totaling approximately $682, that were returned as account closed or as insufficiently funded. Included in this fraudulent activity was a check allegedly written by Findley on June 24, 2009, to Reasor's Northstar Claremore in the amount of $62.81, that was also returned as insufficiently funded. Findley had entered into a payment arrangement with the bogus check division of the Rogers County District Attorney's Office and failed to fulfill the required payment obligations. On November 13, 2009, the charge of Obtaining Merchandise by Bogus Check, in violation of O.S. 21 § 1541(1) was filed in Rogers County District Court under Case No. CM-2009-1340. A warrant has been issued with bond set at $1,000.

Further, Findley was employed with Kmart in Sand Springs, Oklahoma, and during the period from November 2, to November 8, 2009, she stole a check from a Kmart customer and used this check to purchase merchandise in the amount of $327.40. She also created fraudulent refunds and removed cash from the store in the amounts of $104.61 and $62.09. On November 12, 2009, Findley was confronted by store security and she admitted her fraudulent behavior. She was arrested by Sand Springs Police Department for Embezzlement by Employee (AFCF) in violation of Title 21 O.S. § 1456(1), a felony. During booking, Findley allegedly provided a false date of birth and she was additionally charged with Obstruction, in violation of 21 O.S.§ 540. Findley is currently in custody with bond set at $4,500.

II.  **VIOLATION OF STANDARD CONDITION NO. 1 WHICH STATES:** "You will not leave the judicial district without permission of the Court or probation officer." Findley traveled without permission of the Court or probation officer to Springfield, Missouri. She stayed at the Ramada Oasis Convention Center on October 26, 2009, and left the following day without paying for her room. During this stay, Findley falsely represented herself to hotel staff as being associated with Shareholdings/Lambert Corporation.  Findley further represented that the company was planning a large meeting in December 2009, and initiated plans to reserve forty-

eight guestrooms at the facility for December 9, 10, and 11, 2009. The Probation Office contacted the Ramada Hotel staff and informed them that our office was unaware of any affiliation that Findley may have with Shareholdings/Lambert Corporation and that her representation was likely part of a scheme to defraud the hotel or other parties. Ramada Hotel staff indicated that Findley was provided a free over-night stay on October 26, 2009, apparently in an attempt by the hotel to gain the purported company's business.

III. **VIOLATION OF STANDARD CONDITION NO. 3 WHICH STATES:** "You will answer truthfully or inquiries by the probation officer...."

Since Findley's release to supervision, she falsely reported a diagnoses of a serious cancer condition to the probation officer. Findley falsely reported ongoing treatments at Cancer Treatment Center of Tulsa. During an inquiry by the Probation Office, she provided a fabricated letter purportedly prepared by the Cancer Treatment Centers of America dated March 17, 2009. This letter reported a diagnosis of osteosarcoma of the bone and described ongoing treatment up to three times weekly. An investigation by the Probation Office revealed that Findley was not a patient at this treatment center. On May 20, 2009, Findley misrepresented her purported health condition to the Rogers County District Court requesting the case be passed due to radiation treatment. She also reported this condition to staff with the bogus checks division of the Rogers County District Attorney's Office in an apparent attempt to gain sympathy. Further, on November 13, 2009, Findley admitted to the probation officer that she had lied about being afflicted with cancer.

IV. **VIOLATION OF SPECIAL CONDITION NO. 2 WHICH STATES:** "The defendant shall abide by the "Special Financial Conditions" enumerated in General Order Number 99-12, filed with the Clerk of the Court on July 13, 1999." Specifically, Findley violated Condition No. 2 of the Special Financial Conditions that states "You shall not make application for any loan or enter into any credit arrangement, without first consulting with the United States Probation Officer."

Beginning in December 2008, Findley became involved in a relationship with Christopher Fryman who resided in Claremore, Oklahoma. On or about June 19, 2009, Findley signed and deposited a Bank of America Credit Card convenience check in the amount of $2,400 into Fryman's NEO Federal Credit Union Account in Claremore. The Bank of America Credit Card account was established by Fryman prior to his relationship with Findley. With Fryman's consent, Findley gained access to this account by having the alias Lisa Holben added to the account. Findley's action of depositing the Bank of America (BOA) convenience check into Fryman's NEO Credit Union account exceeded the allowable credit limit authorized by BOA on Fryman's account. Fryman withdrew $2,400 in cash from his NEO Credit Union account prior to the BOK check being returned resulting in a loss in the check's

amount to NEO Credit Union. According to Fryman, Findley received $1,400 in cash from this transaction. In a civil action, the credit union obtain a judgment against Fryman in the amount of $2,400. Findley failed to consult with the probation officer prior to entering into this credit arrangement concerning Fryman's BOA credit card account.


## THESE ALLEGATIONS ARE SUPPORTED BY THE FOLLOWING FACTS:

Attached hereto and incorporated as **Exhibit A** are copies of pages three and four of the Judgment and Sentence of Case Nos. 05-CR-155-001-TCK and 06-CR-071-001-TCK, signed by Findley and witnessed by Sr. United States Probation Officer David Plunkett on June 3, 2008, wherein Findley verified that she understood the conditions of her term of supervised release and was provided a copy.

Attached hereto and incorporated as **Exhibit B** is a copy of the Special Financial Conditions, signed by Findley and witnessed by Sr. United States Probation Officer David Plunkett on June 3, 2008, wherein Findley verified that she understood the conditions and was provided a copy.

Attached hereto and incorporated as **Exhibit C** is a copy of the Probable Cause Affidavit describing Findley's fraudulent activity resulting in the charge of Obtaining Cash or Merchandise by Bogus Check filed in Rogers County Case No. CM-2009-1340. Also included is a copy of the charging Information and the Offender Summary for Check Program maintained by the Rogers County District Attorney's bogus check division.

Attached hereto and incorporated as **Exhibit D** is a copy of the TRACIS reported prepared by the Sand Springs Police Department detailing Findley's activity at Kmart resulting in her arrest on November 11, 2009, for Embezzlement by Employee (AFCF) and Obstruction. Also included is a copy of the Associate Witness Statement signed by Findley acknowledging the fraudulent activity.

Attached hereto and incorporated as **Exhibit E** is a copy of a memo from staff with the Ramada Oasis Convention Center in Springfield, Missouri, describing their meeting with Findley that occurred on October 26, 2009. Within this letter are details of Findley's false representation of having an affiliation with Shareholders/Lambert Corporation. Also contained in this exhibit is a invoice indicating Findley's stay at the hotel on October 26, 2009.


Attached hereto and incorporated as **Exhibit F** is a copy of the fabricated letter provided on April 23, 2009, by Findley to the probation officer falsely claiming that she was receiving ongoing treatment for cancer at Cancer Treatment Centers of America.

Attached hereto and incorporated as **Exhibit G** is a copy of the Bank of America Credit Card convenience check signed by Findley, as Lisa Holben, in the amount of $2,400, that she deposited into Fryman's checking account at NEO Credit Union in Claremore. This check was returned as being insufficiently funded resulting in a loss of $2,400 to the credit union.

Senior United States Probation Officer David Plunkett is prepared to testify that Finley has been supervised by this officer since her release on June 2, 2008. This officer can further testify to legal documents obtained from the Rogers County District Attorney's Office and the Sand Springs Police Department. Officer Plunkett can also testify that Christopher Fryman has sustained a substantial financial loss as a result to Findley's activities. Although Fryman gave Findley limited permission to use his credit cards, Findley continued to utilize at least two credit cards beyond Fryman's authorization for purchases and cash withdrawals resulting in losses exceeding $6,000. Payments reportedly made by Findley to the credit card companies were returned as insufficiently funded. Without Fryman's knowledge or consent, Findley allegedly filed a change of address notice with the U.S. Postal Service in Claremore changing his address to a post office box maintained by Findley in an attempt to conceal her additional charges on his account. Credit card statements, along with personal mail were being forwarded to Findley's post office box. Further, Fryman had purchased a 2008 Nissan Sentra automobile and financed the vehicle through Compass Bank. Fryman was experiencing financial difficulties and Findley agreed to assist with the payments provided that she could use the vehicle. Findley took possession of the vehicle and failed to fulfil the financial obligations. Compass Bank began the repossession process and attempts by Fryman to have Findley relinquish the vehicle were unsuccessful. The probation office recovered the vehicle's title from Findley and assisted Compass Bank in the recovery of the vehicle. A balance of $22,000 was owed to Compass Bank prior to the vehicle's recovery.

PRAYING THAT THE COURT will issue a WARRANT ordering Findley to be brought before the Court to show cause why her term of supervised release should not be revoked.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,
Bradford J. Stewart

Chief U. S. Probation Officer


by  *s/ David Plunkett*
David Plunkett
Sr. U. S. Probation Officer

Executed on _____ *November 18, 2009* _____
                                    (Date)


Reviewed and approved:

*s/ Larry Hicks* _____ *November 18, 2009* _____
Larry Hicks, Supervising                    (Date)
U.S. Probation Officer

---

## ORDER

     It is the order of the Court that a warrant be issued ordering Findley to be brought before the Court to show cause why her term of supervised release should not be revoked.


     **IT IS SO ORDERED** this 20th day of November 2009.


_____
TERENCE KERN

JUDGMENT
DEFENDANT:          Lisa Jeanine Findley
CASE NUMBER:        05-CR-155-001-TCK



## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Five (5) years.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

x   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

x   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1.  You will not leave the judicial district without permission of the Court or probation officer.
2.  You will report to the probation officer and submit a truthful and complete written report within the first five days of each month.
3.  You will answer truthfully all inquiries by the probation officer, and follow the instructions of the probation officer.
4.  You will successfully participate in cognitive/life skills training or similar programming as directed by the probation officer.
5.  You will support your dependents and meet other family responsibilities, to include complying with any court order or order of administrative process requiring the payment of child support.
6.  You will work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
7.  You will notify the probation officer at least ten days prior to any change of residence or employment.
8.  You will not frequent places where controlled substances are illegally sold, or administered; you shall refrain from excessive use of alcohol and will not purchase, possess, use, distribute or administer any controlled substance or paraphernalia related to such substances, except as prescribed by a physician.
9.  You will submit to urinalysis or other forms of testing to determine illicit drug use as directed by the probation officer; if directed by the probation officer, you will successfully participate in a program of testing and treatment (to include inpatient) for substance abuse until released from the program by the probation officer.
10. You will not associate with any persons engaged in criminal activity, and will not associate with any person convicted of a crime unless granted permission to do so by the probation officer.
11. You will permit a probation officer to visit at any time at your home, employment or elsewhere and will permit confiscation of any contraband observed in plain view by the probation officer.
12. You will provide access to all personal and business financial information as requested by the probation officer; and you shall, if directed by the probation officer, not apply for or acquire any credit unless permitted in advance by the probation officer.
13. You will notify the probation officer within seventy-two hours of being arrested, questioned, or upon having any contact with a law enforcement officer.
14. You will not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the Court.
15. As directed by the probation officer, you will notify third parties of risks that may be occasioned by your criminal record or personal history or characteristics, and permit the probation officer to make such notifications and to confirm your compliance with such notification requirements.
16. You will not possess a firearm, destructive device, or other dangerous weapon.

DEFENDANT:          Lisa Jeanine Findley
CASE NUMBER:        05-CR-155-001-TCK

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall abide by the "Special Search and Seizure Condition" enumerated in General Order Number 99-14, filed with the Clerk of the Court on July 13, 1999.

2.  The defendant shall abide by the "Special Financial Conditions" enumerated in General Order Number 99-12, filed with the Clerk of the Court on July 13, 1999.

### Acknowledgment of Conditions

I have read or have had read to me the conditions of supervision set forth in this judgment and fully understand them and have been provided a copy of them.

I understand that upon a finding of a violation of probation or supervised release, the Court may (1) revoke supervision, (2) extend the term of supervision, and or (3) modify the conditions of supervision.

_Lisa Findley_    6-3-08
Signature              Date

_[signature]_    6-3-08
U.S. Probation Officer    Date

AO 245   (Rev.06/05) Judgment in a Criminal Case
JUDGMENT
DEFENDANT:           Lisa Jeanine Findley
CASE NUMBER:         06-CR-071-001-TCK

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Three (3) years. This term is to run concurrently with the term in U.S. District Court Case Number 05-CR-155-001-TCK.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

x   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

x   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1.   You will not leave the judicial district without permission of the Court or probation officer.
2.   You will report to the probation officer and submit a truthful and complete written report within the first five days of each month.
3.   You will answer truthfully all inquiries by the probation officer, and follow the instructions of the probation officer.
4.   You will successfully participate in cognitive/life skills training or similar programming as directed by the probation officer.
5.   You will support your dependents and meet other family responsibilities, to include complying with any court order or order of administrative process requiring the payment of child support.
6.   You will work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
7.   You will notify the probation officer at least ten days prior to any change of residence or employment.
8.   You will not frequent places where controlled substances are illegally sold, or administered; you shall refrain from excessive use of alcohol and will not purchase, possess, use, distribute or administer any controlled substance or paraphernalia related to such substances, except as prescribed by a physician.
9.   You will submit to urinalysis or other forms of testing to determine illicit drug use as directed by the probation officer; if directed by the probation officer, you will successfully participate in a program of testing and treatment (to include inpatient) for substance abuse until released from the program by the probation officer.
10.   You will not associate with any persons engaged in criminal activity, and will not associate with any person convicted of a crime unless granted permission to do so by the probation officer.
11.   You will permit a probation officer to visit at any time at your home, employment or elsewhere and will permit confiscation of any contraband observed in plain view by the probation officer.
12.   You will provide access to all personal and business financial information as requested by the probation officer; and you shall, if directed by the probation officer, not apply for or acquire any credit unless permitted in advance by the probation officer.
13.   You will notify the probation officer within seventy-two hours of being arrested, questioned, or upon having any contact with a law enforcement officer.
14.   You will not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the Court.
15.   As directed by the probation officer, you will notify third parties of risks that may be occasioned by your criminal record or personal history or characteristics, and permit the probation officer to make such notifications and to confirm your compliance with such notification requirements.
16.   You will not possess a firearm, destructive device, or other dangerous weapon.

Case 4:06-cr-00071-TCK   Document 19   Filed in USDC ND/OK   11/09/2006   Page 4 of 6

DEFENDANT:         Lisa Jeanine Findley
CASE NUMBER:       06-CR-071-001-TCK

## SPECIAL CONDITIONS OF SUPERVISION

1.   The defendant shall abide by the "Special Search and Seizure Condition" enumerated in General Order Number 99-14, filed with the Clerk of the Court on July 13, 1999.

2.   The defendant shall abide by the "Special Financial Conditions" enumerated in General Order Number 99-12, filed with the Clerk of the Court on July 13, 1999.

Acknowledgment of Conditions

I have read or have had read to me the conditions of supervision set forth in this judgment and fully understand them and have been provided a copy of them.

I understand that upon a finding of a violation of probation or supervised release, the Court may (1) revoke supervision, (2) extend the term of supervision, and or (3) modify the conditions of supervision.

_Lisa Findley_   6-3-08
Signature         Date

_[signature]_   6-3-08
U.S. Probation Officer   Date



## SPECIAL FINANCIAL CONDITIONS

1. You shall maintain a single checking account in your name. You shall deposit into this account all income, monetary gains or other pecuniary proceeds, and make use of this account for payment of all personal expenses. All other bank accounts must be disclosed to the United States Probation Officer.

2. You shall not make application for any loan or enter into any credit arrangement, without first consulting with the United States Probation Officer.

3. You shall disclose all assets and liabilities to the United States Probation Officer. You shall not transfer, sell, give-away, or otherwise convey any assets, without first consulting with the United States Probation Officer.

4. If you maintain interest in any business or enterprise, you shall, upon request, surrender and/or make available for review, any and all documents and records of said business or enterprise to the United States Probation Officer.

5. You shall, upon request of the United States Probation Officer, authorize release of any and all financial information, to include income tax return records, by execution of a Release of Financial Information form, or by any other appropriate means.

Northern District of Oklahoma Miscellaneous Order Number M-128 or General Order 99-12

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

_(Signature of Lisa Findley)_

6-3-08

_(Date Signed)_

Witness: _(David Plunkett, U.S. Probation Officer)_



EXHIBIT

C

## IN THE DISTRICT COURT OF ROGERS COUNTY
## THE STATE OF OKLAHOMA

THE STATE OF OKLAHOMA,   PLAINTIFF,   )
                              )
vs.                                    )
                              )
LISA JEANINE HOLDEN     DEFENDANT, )  No CM2009-1340

FILED IN THE DISTRICT COURT
ROGERS COUNTY OKLAHOMA

NOV 13 09

CANDI CZAPANSKY, COURT CLERK

DEPUTY

▇▇▇▇▇▇
CLEVELAND, OK ▇▇▇
DOB: ▇▇▇ 1971
SSN: ▇▇▇-8588 DL Num: 085321369
DL State: OK Height: 5-06 Race: W
Eyes: BLUE

### PROBABLE CAUSE AFFIDAVIT

COMES NOW, the undersigned Affiant, of lawful age and being first sworn, upon oath, alleges and states that based upon the following, Affiant has reason to believe that the Defendant(s) has committed the offense of OBTAINING CASH OR MERCHANDISE BY BOGUS CHECK.

That LISA HOLDEN on or about the 24th day of June, 2009 tendered check number 1035 in the amount of $62.81, to REASORS NORTHSTAR CLAREMORE, in the county of Rogers, State of Oklahoma on account 000000005400003277 with 1ST BANK OF OKLAHOMA.

The check was presented for payment within 30 days of receipt and returned closed account.

That on or about October 12, 2009, the defendant was mailed a notice of bogus check to the address listed on the check by the District Attorney's Office.

That the office of the District Attorney has made several attempts to contact the Defendant and Defendant has failed to pay the amount due. To date, November 4, 2009, the total restitution due is $1,865.61.

That the merchant used their usual and customary business practices for identification of the defendant. The merchant obtained the Defendant's drivers license identification at the time the check was presented.

Based upon this Affidavit, the undersigned prays that this Honorable Court issue a finds of fact that there is probable cause to issue a warrant of arrest for the crime of OBTAINING CASH OR MERCHANDISE BY BOGUS CHECK.

Further Affiant Sayeth Not

Dated this 5th day of November , 2009 .

_Reginald Williams_
Affiant

SUBSCRIBED AND SWORN to before me by the said Affiant on this 5th day of November, 2009.

MY COMMISSION EXPIRES: July 27, 2011

(SEAL)

Warrant Approved ✓

Bond Amount: $ 1,000.00

_Karen Reaves_
Notary Public

KAREN REAVIS
NOTARY
Comm. #07007201
Exp. July 27, 2011
PUBLIC
STATE OF OKLAHOMA

_Brian L. Ogren_
JUDGE OF THE DISTRICT COURT
11/9/2009

# WARRANT OF ARREST

ROGERS COUNTY DISTRICT COURT

CASE NO. CM2008-1340

STATE OF OKLAHOMA  }
                   }  ss.
ROGERS COUNTY      }

TO THE SHERIFF OF THE COUNTY OF ROGERS OR TO ANY SHERIFF, CONSTABLE, MARSHAL, POLICEMAN OR PEACE OFFICER OF THIS STATE.

Complaint on oath having been this day laid before me, that the crime of

OBTAINING CASH OR MERCHANDISE BY BOGUS CHECK
21 O.S. § 1541.1

has been committed, and accusing LISA JEANINE HOLDEN, thereof

BOND: $1000.00
Address: ▓▓▓▓▓
City: CLEVELAND        State: OK        ZIP: ▓▓▓▓▓
Birth Date: ▓▓▓1971    SSN: ▓▓▓▓8588    DL: 085321369      OK
Height: 5-06           Weight: 185      Eyes: BLUE
Race: W                Sex: F

YOU ARE THEREFORE COMMANDED FORTHWITH TO BRING THE ABOVE NAMED LISA HOLDEN and bring him before me at my office in said county, to answer said charge.

DATED THIS ___9th___ DAY OF ___November___, 200_9_.

WITNESS MY HAND AND OFFICIAL SEAL

_____
JUDGE OF THE DISTRICT COURT

RETURN OF SERVICE

**STATE OF OKLAHOMA**   }
                        }
**ROGERS COUNTY**       }

Received this Writ the _____ day of _____, _____, and executed it by arresting the within named _____ and now have his body before the Court.

| Fees-Service and Return of Writ | $ |
|---|---|
| Service on First Person | $ |
| Service on Additional Persons | $ |
| Bringing prisoner into Court | $ |
| Attending Examination | $ |
| Mileage | $ |
| Total | $ |

_____          _____
Arresting Officer                Sheriff

INFORMATION

FILED IN THE DISTRICT COURT
ROGERS COUNTY OKLAHOMA

**NOV 13 09**

CANDI CZAPANSKY, COURT CLERK

THE STATE OF OKLAHOMA,     PLAINTIFF,   )
                                     )
VS.                                     )
                                    )
                         DEFENDANT,  )      NO.    CM- 2009 - 1310

LISA JEANINE HOLDEN

DEPUTY

████████
CLEVELAND, OK ████
DOB: ████, 1971
SSN: ████8588 DL Num: 085321369
DL State: OK Height: 5-06 Race: W
Eyes: BLUE             INFORMATION

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OKLAHOMA:

Now comes Gene Haynes, the duly qualified and acting District Attorney in and for Rogers County, State of Oklahoma, and gives the District Court to know and to be informed that LISA HOLDEN did, in Rogers County, on the 24th day of June, 2009, and before the presentment hereof, commit the crime of

OBTAINING MERCHANDISE BY BOGUS CHECK
21 O.S. § 1541.1

That on the day and year in the County and State aforesaid, said LISA HOLDEN did wilfully, knowingly, fraudulently obtain MERCHANDISE from REASORS NORTHSTAR CLAREMORE in the amount of $62.81 by means of a certain false and bogus check, which check is in words and figures as follows:

1035                                                    06/24/2009
Pay to the order of REASORS NORTHSTAR CLAREMORE           $62.81
Sixty Two Dollars and 81 Cents

                                  LISA HOLDEN

the said defendant well knowing then and there that LISA HOLDEN had insufficient funds in, or credit with the bank on which said check was drawn, and that said check(s) was worthless, false, bogus and no value, and did utter and deliver the same to the said REASORS NORTHSTAR CLAREMORE with the fraudulent intent then and there to cheat and defraud, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma.

By _____
        Assistant District Attorney

State of Oklahoma )
) ss.
County of Rogers )

I, Raqiel Williams, being duly sworn, on oath state that I have read the above and foregoing information and know the contents thereof and that the facts stated herein are true.

_____
Affiant

SUBSCRIBED AND SWORN to before me by the said Affiant on this 5th day of November, 200 9.

MY COMMISSION EXPIRES: July 27, 2011

_____
Notary Public

(SEAL)

KAREN REAVIS
NOTARY
Comm. #07007201
Exp. July 27, 2011
PUBLIC
STATE OF OKLAHOMA

WITNESSES:

Bogus check Coordinator, 216 S. Missouri, Claremore, OK 74017
Investigator, District 12, Oklahoma District Attorney

# Offender Summary for Check Program

RRW

HOLDEN, LISA JEANINIE
CLEVELAND, OK

Case # N 1ST NOTICE
DL # 085321369 OK
SSN# ████ 8588

| Date | Victim Name | Posted Date | Reference/ Pmt Type | Amt | V Fee | DA Fee | Bal | V Bal | DA Bal | Case Bal |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/29/2007 | SINORS / CHARR X PRESS | | 2037 | 11.18 | 25.00 | 174.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 12/14/2008 | CPI CORP / TELECHECK | | 1016 | 50.00 | 25.00 | 174.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 01/20/2009 | TOP NAILS | 03/04/2009 | 2028 | 58.00 | 25.00 | 174.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 01/31/2009 | S & Z ENTERPRISES - DBA QUICKMART | | 1031 | 24.49 | 25.00 | 174.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 02/16/2009 | CITGO FOOD MART | 04/06/2009 | 2032 | 24.50 | 25.00 | 174.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 03/19/2009 | Payment :CA | | | -205.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 03/27/2009 | SINORS / CHARR X PRESS | | 2036 | 20.59 | 25.00 | 174.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 03/29/2009 | SINORS / CHARR X PRESS | | 2039 | 21.00 | 25.00 | 174.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 03/31/2009 | SINORS / CHARR X PRESS | | 2045 | 11.18 | 25.00 | 174.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 04/03/2009 | Payment :CA | | | -52.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 04/20/2009 | Payment :CA | | | -223.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 05/18/2009 | SALLYS BEAUTY 1706 / CERTEGY | | 002003 | 25.02 | 25.00 | 174.00 | 25.02 | 25.00 | 174.00 | 224.02 |
| 05/24/2009 | LOWES HOME CENTERS INC 1891 / CERTEGY | | 001106 | 240.23 | 25.00 | 174.00 | 240.23 | 25.00 | 174.00 | 439.23 |
| 05/24/2009 | LOWES HOME CENTERS INC 1891 / CERTEGY | | 001107 | 50.37 | 25.00 | 174.00 | 50.37 | 25.00 | 174.00 | 249.37 |
| 06/19/2009 | Payment :CA | | | -400.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 06/22/2009 | Payment :CC | | | -683.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 06/22/2009 | Payment :CA | | | -0.44 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 06/24/2009 | REASORS NORTHSTAR CLAREMORE | | 1035 | 62.81 | 25.00 | 174.00 | 62.81 | 25.00 | 174.00 | 261.81 |
| 06/27/2009 | REASORS NORTHSTAR CLAREMORE | | 1036 | 38.08 | 25.00 | 174.00 | 38.08 | 25.00 | 174.00 | 237.08 |
| 07/27/2009 | WILL ROGERS MARKET PLACE/ BW REALTY | | 2010 | 30.45 | 25.00 | 174.00 | 30.45 | 25.00 | 174.00 | 229.45 |
| 07/28/2009 | WILL ROGERS MARKET PLACE/ BW REALTY | | 2015 | 25.65 | 25.00 | 174.00 | 25.65 | 25.00 | 174.00 | 224.65 |
| 08/05/2009 | Payment :CA | | | -187.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 08/19/2009 | Payment :CA | | | -62.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | $693.55 | $375.00 | $2,610.00 | $472.61 | $175.00 | $1,218.00 | |

Original: $3,678.55    Balance: $1,865.61
Total Paid: $1,812.94

# TRACIS



SAND SPRINGS POLICE
**ARREST AND BOOKING DATA**

| COMPLAINT NUMBER |
| --- |
| **09-021567** |

PAGE    1    OF    1

☒ CHECKED NCIC

PLACE OF BIRTH   Lynwood, CA

**MUG & PRINT**

☒ PARTIAL  ☐ COMPLETE   PHOTO TO _____   TCSO NUMBER _____   COURT DATE _____   DIVISION _____

☐ FEDERAL DISTRICT  ☒ TULSA DISTRICT  ☐ OSAGE DISTRICT  ☐ MUNICIPAL   HOLD FOR _____   ☐ JUV  ☐ R.O.P.

LOCATION OF ARREST
1200 E. Charles Page, Sand Springs, OK 74063

LOCATION OF OFFENSE
1200 E. Charles Page, Sand Springs, OK 74063

| | MO | DATE | YR | DAY | TIME | | MO | DATE | YR | DAY | TIME | | MO | DATE | YR | DAY | TIME |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OCCURRED | 11 | 02 | 09 | MON | 1148 | ARRESTED | 11 | 12 | 09 | THU | 1512 | BOOKED | | | | | |

| TID/FID | SUSPECT NAME (LAST, FIRST, MIDDLE) | | | AKA | | HGT | WGT | HAIR | EYES | SKIN | RACE | SEX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Holden, Lisa Jeanine | | | | | 506 | 185 | BLN | BLU | F | C | F |

| STREET ADDRESS, CITY, STATE | ZIP CODE | AGE | DATE OF BIRTH | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|
| ████ Cleveland, OK | ████ | 38 | ████71 | ████8588 |

| EMPLOYER/SCHOOL NAME | HOME PHONE | DRIVER'S LICENSE NUMBER | ST | CLASS | EXP |
|---|---|---|---|---|---|
| unemployed | ████433 | D082351369 | OK | D | 12-11 |

| EMPLOYER ADDRESS, CITY, STATE, ZIP | BUSINESS PHONE | OSSN NUMBER | FBI NUMBER |
|---|---|---|---|
| | | none | none |

| NEXT OF KIN | ADDRESS | PHONE | RELATIONSHIP |
|---|---|---|---|
| Linda Livolsi | Cleveland | ████944 | Sister |

| PERSONAL ODDITIES | TATTOOS |
|---|---|
| Scar stomache and L. knee, ears pierced, nose pierced | lower back |

| CLOTHING | WARNING INDICATORS |
|---|---|
| Wht t-shirt, blk pants, blk shoes | |

| | DISPOSITION/HOLD | VIN | TAG YR | STATE | TAG NUMBER |
|---|---|---|---|---|---|
| VEHICLE | | | | | |
| | VEH YR | VEH MAKE | VEH MODEL | VEHICLE STYLE | COLOR TOP/BOTTOM | MISC IDENTIFIERS |

| ARRESTING OFFICER | ID NUM | DIV | AGENCY | BACKING OFFICER | ID NUM | DIV | AGENCY | JAIL INTAKE | ID NUM |
|---|---|---|---|---|---|---|---|---|---|
| MPO M. Lemon | 250 | PTL | SSPD | MPO B. Brandt | 251 | PTL | SSPD | | |

| FBR STA 000 | 000 | CRIME DESCRIPTION | TITLE | SECT | PARA | DATE OF OFFENSE | WARRANT NUMBER | ORI | BOND | O.R. | UOR |
|---|---|---|---|---|---|---|---|---|---|---|---|
| S | F | Embezzlement by Employee (AFCF) | 21 | 1456 | 01 | 111209 | | SS | 4000.00 | | |
| S | M | Obstruction | 21 | 540 | | 111209 | | SS | 500.00 | | |

**EXHIBIT**
**D**

| FORCE | LEVEL: | ☒ NONE  ☐ MINIMAL  ☐ DEFENSIVE  ☐ DEADLY   INJURED: ☐ PRISONER  ☐ OFFICER |
|---|---|---|
| | DOCUMENT: | |

09021567

| BREATHALYZER OPERATOR / ID NUM / AGENCY | BREATHALYZER SUPERVISOR / ID NUM / AGENCY | TEST RESULTS BAC |
|---|---|---|

MEDICAL PROBLEMS

| PROPERTY RECEIPT | AUDIO / VIDEO TAPE | PHOTO NUMBER | LATENT NUM |
|---|---|---|---|

**RIGHT INDEX**

| CONNECTED: | SUSPECTS | VICTIM | ASSOCIATES | WILL SIGN CITY INFORMATION |
|---|---|---|---|---|

# TRACIS

TULSA AREA AUTOMATED CRIME INFORMATION SYSTEM



## SAND SPRINGS POLICE DEPARTMENT

### WITNESS STATEMENT

| COMPLAINT NUMBER | | |
|---|---|---|
| | PAGE 1 OF 1 | |

| OFFENSE TYPE | VICTIM'S NAME | LOCATION |
|---|---|---|
| Embezzlement | Kmart | 1200 E Charles Page Blvd. Sand Springs, OK 74063 |

| MY NAME IS | MY PHONE NUMBER IS |
|---|---|
| Nathan Dollarhide | 5921 |

| I LIVE AT | I WORK FOR |
|---|---|
| 1200 E Charles Page Blvd. Sand Springs, OK 74063 | Kmart |

| SS / FED NUMBER | DATE OF BIRTH |
|---|---|
| 9206 / 081097127 | 02/22/1977 |

On 11/10/2009 I, Loss Prevention Manager Nathan Dollarhide, was notified by closing manager Donna Wyrick that a customer identified as Kristy Baker had came into the store alleging that someone had used a stolen check from her account in our store. Baker said that on 11/02/2009 she came into the store and made two separate sears card payments with two separate checks numbering 4765 and 4766. Baker further stated that a few days later her account was overdrawn. When Baker checked on it she found that check number 4765 had been used twice, once on the first card payment and once on the second payment. Check number 4766 was then used on 11/03/2009 for a purchase of $327.40. Baker stated that she did not make that purchase and did not authorize anyone else to her check. Based on this I opened an investigation. My investigation uncovered the following.

On 11/02/2009 at approx 1148 hrs Baker came into the store and made said credit card payments on reg 26 transactions 55 and 56. Associate Lisa Holden processed the payments. Further I found that check 4765 was used electronically to pay for both credit card payments. Video shows Holden take two remittance slips and two checks. It shows Holden use one check to make both payments and keep one blank check. Further review shows Holden place the used check and the blank check in the register rather than give them back to the customer as policy would have her do.

On 11/03/2009 at approx 1643 hrs Holden makes a purchase in the amount of $327.40 on register 26 transaction number 291 using check number 4766 which was the second check belonging to Baker. Holden did this without Bakers permission.

On 11/02/2009 at approx. 1324 hrs Holden used a receipt that had been left by a customer on 10/29/2009 to complete a fraudulent refund in the amount of $62.09 on register 25 transaction number 3685 and not taking the money from the register. At approx. 1522 hrs Holden opens the same register and removes some money and places it on the counter behind the service desk. At approx. 1612 hrs Holden picks up the money from the counter and places it in her pocket before clocking out and leaving.

On 11/08/2009 at approx. 1428 hrs Holden uses the receipt from the purchase she made with the stolen check to complete a fraudulent refund in the amount of $104.61 on register 25 transaction number 3950. Holden does not immediately remove the money. At approx. 1442 Holden removes some money from the register and places it on the counter. Holden taker places her coat on the back counter next to the money. At approx. 1447 hrs Holden leans on the counter moves her coat over the money, makes some furtive movements then moves away with her coat in her hand. Register 25 was even for the day and no money was turned in or found at the service desk that day.

On 11/12/2009 at approx. 1340 hrs I sat down with Holden to have an open conversation with her about her activities while employed with Kmart. During this conversation Holden admitted to the following. Stealing a check from a customer and using said check to purchase merchandise in the amount of $327.40. Creating fraudulent refunds and taking the cash in the amount of $104.61 and $62.09. Holden also wrote and signed a statement to these facts. Holden did this of her own free will and no promises were made.

Total cash loss is $494.10. Total merchandise loss is $327.40.

THIS IS MY TRUE AND VOLUNTARY
STATEMENT IN MY OWN WORDS AND, I WILL
ASSIST IN PROSECUTION.

_____
SIGNATURE

| REPORTING OFFICER | ID | DIVISION | LOCATION | DATE | TIME |
|---|---|---|---|---|---|
| | | | | | |

# SEARS HOLDINGS

Unit # 3067  Incident Log # or I.R.M.A. # _____

Page 1 of 1

## Associate Witness Statement

Associate Name: Lisa Holden    Associate #: 42

Department/Position: Service

My knowledge of the incident is as follows (who, what where, when and how?)

My name is Lisa, I started here at Kmart in Sept. 09. After stealing at KMart I've had alot of pressure of situations at home, that made me make a bad choice of taking money from the company by fraudulent refunds and stupidly taking from a customer. This is not nor the proper way of me to have tried to take care of things going on in my life. I would def like to pay back my bad choice of mistake. I would like to pay back the amount of the refunds - $116.70 and pay back the check of $857.40 plus fees, from where I took the customers check and used it

Associate name: L H Holden    Signed: Lisa Holden    Date: 11-12-09

The above statement was made to:

Nathan Dallashide    Signed: Nat Dowl    Date: 11-12-09





# *Memo*

| | |
|---|---|
| *To:* | *David Plunkett, U.S. Probation Officer* |
| *CC:* | |
| *From:* | *Missy Handyside* |
| *Date:* | *11/16/09* |
| *Re:* | *Lisa Findley, AKA Lisa Holden* |

☐ *Urgent*    ☐ *For Review*    ☐ *Please Comment*    ☐ *Please Reply*    ☐ *Please Recycle*

David,

In regards to Lisa Findley aka Lisa Holden, I met Ms. Holden in our hotel lobby on Monday, October 26, 2009. She was inquiring on room rates as I was walking through the lobby, so I stopped and introduced myself. She said that she and a few of her colleagues were staying at the Holiday Inn next door but was not happy and was interested in moving to the Ramada. She explained that she was with Shareholdings/Lambeth Corp (parent company of K-Mart/Sears) and that she was in Springfield for a meeting. She continued to tell me that she and her colleagues stay in Springfield a couple of times a month and usually has 10-15 rooms each time.

I showed her a few of our guestrooms and explained that I would be happy to extend her our Corporate Preferred Rate of $71.00 plus tax. I upgraded her to one of our business king suites and she checked in.

As I was leaving my office that evening about 7pm I ran into her and a gentleman in the hall. I asked if they were having dinner here on property at Fire & Ice and she said they were. I extended them a good evening and left for home.

The next morning she called me and thanked me for a good stay and told me how wonderful dinner was the night prior. She then went on to tell me that she would be holding a large meeting in Springfield in December and would like to book it with me. She said it was for Shareholdings/Lambeth Corp and the meeting was titled US Bonding & Recovering Seminar. She reserved 48 guestrooms on the nights of December 9, 10 & 11, 2009 and a meeting room for 120 people with lunch on Thursday, Dec. 10th. She first requested to have the meeting on Friday, but I explained we were booked on that day and she quickly decided that Thursday would work fine.

I asked her for details and she explained that she would provide me with a room list as the meeting neared and would like to set up direct billing. I told her I would leave a direct bill application at the front desk for her to complete prior to her checking out. She did complete and application (see following).

She checked out of the hotel on October 27, 2009 and told our Front Desk Clerk to direct bill her charges from the night prior. Unfortunately, my staff member did not dispute this and let her leave without paying (see attached folio).

I sent Lisa a Reservation Agreement via email on November 3rd to ████@yahoo.com (see following correspondence). I never heard from her again. I phoned Lisa last week to inquire about signed contract and she explained that she could not open my email so I needed to mail the agreement. I confirmed her address as ████████, Cleveland, OK ████ and she said; no send it to ██████████. (you will notice on her direct bill application she said P██████████, but on her folio she told the Front Desk PO.████████.)

I mailed the contract late last week with no word back from Lisa.

I have attached all the information that I have regarding this matter. Feel free to contact me with any additional questions. My direct phone line is 417-522-7710.

Best regards,

Missy Handyside
Ramada Oasis Hotel



Ramada Springfield Oasis
2546 North Glenstone Avenue
Springfield, MO 65803
Tel: (417) 866-5253  Fax: (417) 866-5292
springfieldoasis.com oasis@springfieldoasis.com

10-26-09

| Liss Holden | Folio No. | : | Room No. | : | 578 |
| | A/R Number | : | Arrival | : | 10-26-09 |
| Cleveland, OK | Group Code | : | Departure | : | 10-27-09 |
| US | Company | : | Conf. No. | : | 65069374 |
| | Wyndham Rewards | : | Rate Code | : | RACK |
| | Invoice No. | : | Page No. | : | 1 of 1 |

| Date | Description | Charges | Credits |
|------|-------------|---------|---------|

Thank you for staying with us.
It was our pleasure to serve you.

EXHIBIT
**F**



**Northern District
Of Oklahoma**



*ATTN:*

**David Plunkett**
Senior United States
Probation Officer

333 W. 4th Street, Room 3820
Tulsa, Oklahoma 74103-3819

Phone: 91?-699-4833
Fax: 943-699-4873
Cell: 7?9-4977
email: plunkett@xnd.uscourts.gov

4-23-09   12:00pm

David -

Please find to follow; my pay stubs for April. 09 - 5th & 20th and a copy of what my treatment was & Diagnosis. If you need or have any questions give me a call @ ███████1531.

*Lisa Hobbs*

Total Pages 4



Winning the fight against cancer every day®
**SOUTHWESTERN REGIONAL**
**MEDICAL CENTER**
10109 E. 79ᵀᴴ ST.
TULSA, OK 74133
918-286-5000


MARCH 17, 2009


TO WHOM IT MAY CONCERN:

THIS IS INFORMATIONAL INFORMATION PER OUR PATIENT MS. LISA HOLDEN'S REQUEST FOR EMPLOYER PURPOSES. MS.
HOLDNE IS CURRENTLY UNDER OUR CARE THRU CANCER CARE ASSOCIATES SOUTH TULSA CANCER CENTER. MS. HOLDEN IS
CURRENTLY RECIEVEING TREATMENT UP TO 3 TIMES PER WEEK IF ABLE DUE TO OTHER HEALTH ISSUES THAT WOULD POSSIBLY
KEEP HER FROM NOT RECEIVING TREATMENT. MS. HOLDEN HAS ALSO BEEN HAVING TO RECEIVE BLOOD IN ORDER TO KEEP
CERTAIN LEVELS HIGH FOR CHEMOTHERAPY . MS. HOLDEN'S DIAGNOSIS AT THIS TIME IS OSTEOSARCOMA OF THE BONE. IF
THERE MAY BE ANY INFORMATION YOU MAY NEED PLEASE REQUEST WITH MS. HOLDEN.


SINCERELY,

SHARIE BERNHART, RN BSN
PATIENT ADVOCATE

Christopher Fryman
Lisa Holben

Claremore, OK

Check not valid after 08/31/2009     1056

DATE 6-20-07

62-16
311

PAY TO THE
ORDER OF Christopher Fryman     $ 2400. 00/xx

Two Thousand Four Hundred & 00/100     DOLLARS

FIA Card Services, N.A.
Wilmington, Delaware

Security features included.
Details on back.

**Bank of America**

FOR transfer of funds     Lisa A Holben

⑈031100160⑈ ⬛⬛⬛⬛⬛⬛⬛⬛⬛ 28⬛ 1056

EXHIBIT
G

"FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

Security features on this check include &
Micro-Print Signature Line and Security Screen
Absence of these features may indicate alteration

4982

JUN 19 2009

NEOPOST

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

Deposit