# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | **UNDER SEAL** |
| **v.** | ) | **Case No.** | **05-CR-155-001-TCK** |
| | ) | | |
| **LISA JEANINE FINDLEY,** | ) | | |
| **a/k/a "LISA JEANINE SULLINS"** | ) | | |
| **a/k/a "LISA HOLDEN"** | ) | | |
| **Defendant.** | ) | | |

## ORDER
## ON SUPERVISED RELEASE

COMES NOW Alton Livingston, Probation Officer of the Court, presenting an official report upon the conduct and attitude of Lisa Jeanine Findley, who was placed on a forty-eight month term of supervised release by the Honorable Terence C. Kern, United States District Judge, sitting in the Court at Tulsa, Oklahoma, on the 9th day of June 2010.[1]  The Court imposed the general terms and conditions of supervision theretofore adopted by the Court, and also imposed the special conditions and terms as follows:

The defendant shall abide by the "Special Search and Seizure Condition."

The defendant shall abide by the "Special Financial Condition."

On August 23, 2012, pursuant to Rule 32.1 and 18 U.S.C. § 3583(e)(2), the Court modified the defendant's conditions at Findley's request because she was experiencing depression. The following condition was added:

---

[1]On October 30, 2006, Lisa Jeanine Findley was sentenced to twenty months imprisonment for False Statement to Obtain a Bank Loan, in violation of 18 U. S. C. § 1014.  She also received a five year term of supervised release.  Findley was sentenced to six months imprisonment for Failure to Appear, in violation of 18 U.S.C. § 3146(a)(1), case number, 06-CR-071-001-TCK.  The term of supervised release for this case has expired.  On June 2, 2008, Findley began her term of supervised release.  On June 9, 2010, Findley's term of supervised release  was revoked for a new state conviction for one count of Uttering a Forged Instrument and two counts of False Pretense over $500.  Findley was sentenced to twelve months imprisonment. The sentence was ordered to run consecutively to Tulsa County Case No. CF-2009-5480.  The sentence was ordered to be followed by a forty-eight month term of supervised release.  On October 31, 2011,  Findley was released to begin her second term of supervised release. Findley's  term of supervised release is scheduled to expire on October 30, 2015.

The defendant shall participate in a program of mental health treatment, to include inpatient, with a treatment provider and on a schedule approved by the probation officer. The defendant shall waive any right of confidentiality in any records for mental health treatment to allow the probation officer to review the course of treatment and progress with the treatment provider.

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT AND FOR CAUSE AS FOLLOWS:

Findley has committed the following violations of supervised release:

I.     **VIOLATION OF MANDATORY CONDITION:** "The defendant shall not commit another State, Federal, or local crime."

Between July 21, 2014, and July 23, 2014, Findley wrote four checks to Todd Porter totaling $5,150, from her personal Bank of America checking account #7476, that were returned to the bank due to insufficient funds. Said conduct constitutes a violation of the conditions of supervised release and violates State law; specifically, 21 O.S. § 1541.1, Obtaining Property by Trick or Deception- Attempt- False Representation or Pretense- Confidence Game, an offense punishable of up ten years imprisonment.

THIS ALLEGATION IS SUPPORTED BY THE FOLLOWING EXHIBITS AND TESTIMONY:

Attached hereto and incorporated as **Exhibit A** is a copy of pages three and four of the Judgment establishing the conditions of supervised release the Court imposed upon Findley. Findley was read and given a copy of her conditions acknowledged these conditions by providing her signature on October 31, 2011. This exhibit forms the basis for each of the alleged violations. Additionally included is the waiver signed by Findley on February 20, 2012, agreeing to the modification of her conditions to include the "Mental Health Condition."

Attached hereto and incorporated as **Exhibit B** is a copy of the returned checks from Findley's Bank of America checking account number # 7476. Specifically, check numbers 2004, 2005, 2006, and 2007. The checks were paid to Todd Porter and returned as insufficient funds.

United States Probation Officer Alton Livingston will testify that in July 2014, Lisa Findley began a romantic relationship with Todd Porter. During the course of this relationship Porter loaned Findley money for a purported land tax payment which would enable her to get a loan to build a house and to pay to get gold she was inheriting. Officer Livingston will testify that she interviewed Joe Trinidad, with Bank of America and he confirmed the checks written to Todd Porter were from Findley's checking account #7476 and that at the time they were written she did not have the funds to support check payments. Additionally, Officer Livingston will testify that Trinidad advised that Findley only deposited $50 when she opened the account and no other deposits were made to that account. The checks were written to payback Porter.

II. **VIOLATION OF STANDARD CONDITION #1 WHICH STATES:** "The defendant shall not leave the judicial district or other specified geographic areas without permission of the court or probation officer."

Between July 22, 2014, and July 27, 2012, Findley traveled on separate days to both Leavenworth, Kansas, and Copan, Kansas without permission.

On September 26, 2014, Findley traveled to Coffeyville, Kansas, without permission.

THIS ALLEGATION IS SUPPORTED BY THE FOLLOWING TESTIMONY:

Officer Livingston will testify that during an office visit on August 3, 2012, Findley admitted to traveling to Copan, Kansas, on July 22, 26 and 27, 2012, as well as traveling to Leavenworth, Kansas on July 23, 2012, through July 25, 2012, to see Tim Gaske, a man she met through chemistry.com and was dating. This out of state travel was done without approval. Officer Livingston will testify that she interviewed Todd Porter and he reported that on September 26, 2014, he traveled with Findley to Coffeyville, Kansas, to pick up his granddaughter. Additionally, Officer Livingston will testify that Porter reported she also accompanied him on September 27, 2014, when he took his granddaughter home to Coffeyville, Kansas.

III. **VIOLATION OF STANDARD CONDITION NUMBER 3 WHICH STATES:** "The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer."

IV. **VIOLATION OF STANDARD CONDITION NUMBER 6 WHICH STATES:** "The defendant will notify the probation officer at least ten days prior to any change of residence or employment."

Findley has moved eleven times since her release from prison on October 31, 2011. Findley has failed to notify this officer in advance of any of these changes in residence.

On January 17, 2012, Findley reported moving to Pawnee, Oklahoma, on January 12, 2012, to live with Joe Don Colclazier. Thereafter, Findley moved without notifying her probation officer.

On January 22, 2012, Findley moved to Cleveland, Oklahoma, to live with her sister. Findley moved without notifying her probation officer.

In April 2012, Findley reported on her monthly report that she was living in Perry, Oklahoma. She notified this officer after she had already moved. Perry is outside the Northern District of Oklahoma. Findley moved without notifying her probation officer.

In May 2012, Findley moved to Stillwater, Oklahoma. Stillwater is outside the

Northern District of Oklahoma. Findley moved without notifying her probation officer.

On June 10, 2012, Findley moved to Tulsa, Oklahoma to live with her brother, Terry Findley without notifying her probation officer. Thereafter, on September 18, 2012, during a home contact at her brother's residence, Officer Livingston inquired if Findley was in a relationship with anyone and she stated she was not. On October 24, 2012, Officer Livingston spoke with Mike Jones who reported he and Findley had been dating and reported they had met through the dating website match.com. On December 29, 2012, Findley moved out of the brother's residence and failed to report her change of address until January 2, 2013, when she reported moving in with a co-worker, Darla Roy, in Sand Springs, Oklahoma.

On December 3, 2012, Officer Livingston, during an office contact, instructed Findley to get off all internet dating websites, Specifically, match.com, chemistry.com, Ziosks.com, and eharmony. She has failed to comply with those directives.

On December 11, 2013, during an office contact Findley admitted to moving to a new residence in Sand Springs, Oklahoma, in early November 2013, without notifying her probation officer. She reportedly moved in with Robert White, who relocated from Missouri to marry Findley. White moved out and the relationship ended before this officer did the first home contact following the change of address.

On April 21, 2014, Findley requested permission to move in with her new boyfriend, June Burr, in Claremore, Oklahoma. Officer Livingston instructed Findley to schedule an individual counseling session for her and Burr to meet with her counselor to discuss her criminal history and potential third party risk to Burr. On May 1, 2014, Findley moved to Claremore against this officers directives. Findley met Burr through the dating website, plenty of fish.

On June 6, 2014, Findley moved to Tulsa, Oklahoma, to live with a friend, Mark Moss. She moved without notifying her probation officer.

On October 26, 2014, Findley moved to another residence in Tulsa, Oklahoma, to live with a friend, Michael Taylor. Again, she moved without notifying her probation officer.

September 18, 2014, during a home contact, Officer Livingston inquired if Findley was in a relationship with anyone and she stated she was not. On October 6, 2014, Officer Livingston met with Todd Porter, who reported he had been dating Findley for the last three months. Findley met Porter through the dating website, plenty of fish.

THESE ALLEGATIONS ARE SUPPORTED BY THE FOLLOWING TESTIMONY:

Officer Livingston will testify that Findley has moved eleven times since her release from prison. Findley has failed to notify this officer in advance of any of these changes in residence. She will testify that on January 17, 2012, Findley reported moving to Pawnee, Oklahoma, to live with Joe Don Colclazier, without notifying her probation officer. Officer Livingston will testify that on January 22, 2012, Findley moved to Cleveland, Oklahoma, to live with her sister, without notifying her probation officer. Additionally, Officer Livingston will testify that on February 16, 2012, during a community contact, Findley reported she was moving to Broken Arrow, Oklahoma, to live with Sam Flowers whom she met through an online dating website. Officer Livingston will testify that in April 2012, Findley reported living in Perry, Oklahoma, again she moved without notifying her probation officer. Further, Officer Livingston will testify that in May 2012, Findley moved to Stillwater, Oklahoma, without notifying her probation officer. Officer Livingston will testify that on June 10, 2012, Findley moved to Tulsa, Oklahoma, to live with her brother, Terry Findley, without notifying her probation officer. Officer Livingston will also testify that on December 29, 2012, Findley's brother reported he was kicking Findley out of his home. She will testify that Findley did not report her change of address until January 2, 2013, when she reported moving in with a co-worker, Darla Roy, in Sand Springs, Oklahoma. Officer Livingston will testify that on January 2, 2013, she confronted Findley about whether she was dating Stanley Mozingo, and she reported they were not romantically involved. Officer Livingston will testify that on April 24, 2013, she questioned Findley about her relationship with Mozingo and if had changed and she continued to report she was not in a relationship with him. Officer Livingston will testify that after Findley's counselor reported that she was engaged to Mozingo, she confronted her about the engagement and she admitted they were engaged but were waiting awhile before getting married. Officer Livingston will testify that on December 11, 2013, during an office contact, Findley admitted to moving to a new residence in Sand Springs, Oklahoma, to live with Robert White, earlier in November 2013. She will testify that on May 1, 2014, Findley moved to Claremore, Oklahoma, to live with June Burr whom she met through the dating website plenty of fish, without notifying her probation officer. Officer Livingston will testify that on June 6, 2014, Findley moved to Tulsa, Oklahoma, to live with a friend, Mark Moss, without notifying her probation officer. Finally, Officer Livingston will testify that on October 26, 2014, Findley moved to another residence in Tulsa, Oklahoma, to live with a friend, Michael Taylor, without notifying her probation officer.

Officer Livingston will testify that she instructed Findley to get off all internet dating websites on December 3, 2012. Further, she will testify that subsequent to the directive on three occasions she spoke to three different men who reported that they had met Findley through the dating website, plenty of fish and match.com; specifically, on October 24, 2012, she spoke to Mike Jones; June 4, 2014, she spoke to June Burr; and October 6, 2014, she spoke to Todd Porter.

Officer Livingston will testify that on May 21, 2014, during a home visit, she discussed with Findley her lack of compliance with regard to moving in with her boyfriend, June Burr, in Claremore, Oklahoma, against this officer's directive.

## V.    VIOLATION OF SPECIAL CONDITION NUMBER 2 WHICH STATES:

"The defendant shall abide by the "Special Financial Conditions. Specifically (a) which states...all other bank accounts must be disclosed to the United States Probation Officer." Additionally, subsection (b) as well which states...the defendant shall not make application for any loan or enter into any credit arrangements, without first consulting with the probation officer."

On December 30, 2011, Findley opened a checking account with USAA account number 134046714, and deposited $25 into the account. The account was opened over the internet and not disclosed to the probation office.

On January 18, 2013, Findley made application and entered into a credit agreement with Rent-a-Center for $2,079. Findley purchased a gas range on credit without first consulting with her Probation Officer.

On March 23, 2013, Findley made application and entered into a credit agreement with Rent-a-Center for $2,373. The credit was used to purchase furniture and done without first consulting with her Probation Officer.

On July 9, 2014, Findley opened a personal checking account with Bank of America, account number 7476. Findley deposited $50 to open said account. Findley did not disclose this account to the probation office.

On August 22, 2014, Findley opened a personal checking account with Bank of America, account number 3543, and deposited a check written from her account 7476 in the amount of $850. Findley did not disclose this account to the probation office.

## THIS ALLEGATION IS SUPPORTED BY THE FOLLOWING EXHIBITS AND TESTIMONY:

Attached hereto and incorporated as **Exhibit C** is a copy of the Special Financial Conditions, signed by Findley and witnessed by United States Probation Officer Alton Livingston on October 31, 2011, wherein Findley verified that she understood the conditions and was provided a copy.

Attached hereto and incorporated as **Exhibit D** is a copy of the transaction history of USAA FSB checking account number 134046714. The history indicates the account was opened on December 30, 2011, with a $25 deposit. It also reflects on January 6, 2012, a transfer deposit of $4,450 into the account which was returned insufficient funds. Prior to the transfer being returned funds were used for purchases and transferred to other accounts, leaving an overdrawn balance of $4,503.72.

Attached hereto and incorporated as **Exhibit E** is a copy of the rental agreement between Findley (Holden) and Rent-A-Center dated January 18, 2013. The agreement reflects that Findley rented a gas range and agreed to make payments of $36.42 a week for said appliance. Findley signed the rental purchase agreement.

Attached hereto and incorporated as **Exhibit F** is a copy of the rental agreement between Findley (Holden) and Rent-A-Center dated March 23, 2013. The agreement reflects that Findley rented a bed frame, queen size mattress and a five piece bedroom set and agreed to make payments of $30.73 a week for said furniture. Findley signed the rental purchase agreement.

Attached hereto and incorporated as **Exhibit G** is a copy of the transaction history of Bank of America checking account number 7476. The history indicates the account was opened on July 9, 2014, with a $50 deposit.  It also reflects thirteen checks written on the account all of which were returned due to insufficient funds. Finally, the history shows that the bank administratively closed the account on October 17, 2014, with a negative balance of $759.68.

Attached hereto and incorporated as **Exhibit H** is a copy of the transaction history of Bank of America checking account number 3543. The history indicates an $850 check deposit written from Findley's Bank of America checking account 7476, check number 2010.  This check was later returned due to insufficient funds and the bank administratively closed the account on October 17, 2014, with a negative balance of $12.00.

Attached hereto and incorporated as **Exhibit I** is a copy of Findley's monthly report for the month of July 2014.  The report does not reflect that Findley opened a bank account at Bank of America account number 7476, during the month of July 2014.

Attached hereto and incorporated as **Exhibit J** is a copy of Findley's monthly report for the month of August, September, and October 2014.  The reports do not reflect that Findley opened a bank account at Bank of America account number 3543, during the month of August 2014.  Thereafter, she omitted the accounts from her monthly report for the months of September and October 2014.

Attached hereto and incorporated as **Exhibit K** is a copy of the Supervision report questions answered by Findley's as part of her monthly report for months of August, September, and October 2014. The exhibit shows that Findley chose not to report her bank accounts as she did not chose the "add new" option.  This option had she answered truthfully would have prompted her to enter the account information for the months in question.

Officer Livingston will testify that she spoke with USAA staff and was given copies of the statements (**Exhibit D**)  from Findley's checking account #1340-4671-4.  The document shows the account was opened with a $25 online deposit and the various transactions that occurred including a $4,450 wire transfer into the account. Further, she will testify that USAA staff disclosed that Findley transferred $1,200 from her account #1340-4671-4, into her boyfriend, Joe Colclazier's account. Once the bank determined all the funds to be insufficient and all the funds had already been transferred or otherwise spent, they contacted Findley and advised her if she paid the outstanding balance on the account they would not pursue criminal charges.  Officer Livingston will testify that she spoke with USAA staff and verified that on March 1, 2002, USAA received the full $4,503.72 owed  from a wire transfer from Findley's boyfriend, Sam Flowers.

Officer Alton Livingston will testify that on November 27, 2013, she was contacted by Rent-A-Center due to Findley's failure to return the furniture and to advise that she was no longer making payments.  Additionally, Officer Livingston will testify that Findley did not report either of these two credit applications and did not receive prior approval from this officer to enter into the agreements. Further, she will testify the store manager reported that Findley told him that she had taken the furniture out of state.

Officer Livingston will testify that she interviewed Joe Trinidad, at Bank of America branch located in downtown Tulsa, Oklahoma.  Trinidad provided her copies of the statements from Findley's two checking accounts (**Exhibits G and H**).  Additionally, Officer Livingston can testify that on October 17, 2014, Bank of America closed  checking account 7476 due to it being overdrawn in the amount of $759.68. She can also testify that Findley only made a $50 deposit into the account despite writing checks of more than $5,000 on the account. Officer Livingston can testify that on October 17, 2014, Bank of America closed  checking account 3543 due to it being overdrawn in the amount of $12. Also, Officer Livingston can testify that the $850 check written and deposited to open account 3543 was returned due to insufficient funds. Further, Officer Livingston will testify that Findley failed to report both  account 7476 and 3543 to her probation officer.  Officer Livingston will testify that Findley failed to disclose the information about account 7476 on her monthly reports for the months of July 2014 through October 2014.  Officer Livingston will testify that Findley failed to disclose the information about account 3543 on her monthly reports for the months of August 2014 through October 2014.

PRAYING THAT THE COURT WILL ORDER that a warrant be issued and that Lisa Jeanine Findley be held to answer as to why her supervised release should not be revoked.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,
Todd Gollihare
Chief U. S. Probation Officer

by *s/Alton Livingston*
    Alton Livingston
    U. S. Probation Officer

Executed on _____ *12/15/14*_____
                    (Date)

Reviewed and approved:

 s/Terril Sweetwod                                12/15/14
Terril Sweetwood, Supervising            DATE
U.S. Probation Officer

_____

### ORDER

It is the order of the Court that a summons be issued and that Lisa Jeanine Findley be brought before the Court to show cause why her term of supervised release should not be revoked.

It is further the Order of the Court that the Clerk of the Court distribute the Order only to the United States Probation Office, the United States Marshals Service, and the United States Attorney's Office.

**IT IS SO ORDERED** this 15th day of December, 2014.

**TERENCE KERN**
**United States District Judge**

AO 245D    (Rev. 12/03) Judgment in a Criminal Case for Revocations
           Sheet 3 — Supervised Release

DEFENDANT:        LISA JEANINE FINDLEY
CASE NUMBER:      05-CR-155-001-TCK

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    forty-eight months (48) as to 05-CR-155-001-TCK to run concurrently with the supervised release term imposed in Case Number 06-CR-071-001-TCK.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of

   future substance abuse. (Check, if applicable.)

X  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works,

   or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1.   The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer;
2.   the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3.   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4.   the defendant shall support the defendant's dependents and meet other family responsibilities (including, but not limited to, complying with the terms of any court order or administrative process pursuant to the law of a state, the District of Columbia, or any other possession or territory of the United States requiring payments by the defendant for the support and maintenance of any child or of a child and the parent with whom the child is living);
5.   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6.   the defendant shall notify the probation officer at least ten days prior to any change of residence or employment;
7.   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician;
8.   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court;
9.   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10.  the defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11.  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12.  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13.  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement (any objection to such notification shall be decided by the district court);
14.  the defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment;
15.  the defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

AO 245D    (Rev. 12/03) Judgment in a Criminal Case for Revocations
           Sheet 3C — Supervised Release

Case 4:05-cr-00155-TCK   Document 47   Filed in USDC ND/OK on 06/11/2010   Page 4 of 6

DEFENDANT:    LISA JEANINE FINDLEY
CASE NUMBER:  05-CR-155-001-TCK

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall submit his person, residence, office or vehicle to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2.  The defendant shall abide by the "Special Financial Conditions" previously adopted by the Court, as follows:

    a.  The defendant shall maintain a checking account in the defendant's name and deposit into this account all income, monetary gains or other pecuniary proceeds, and make use of this account for payment of all personal expenses. All other bank accounts must be disclosed to the probation officer.

    b.  The defendant shall not make application for any loan or enter into any credit arrangement, without first consulting with the probation officer.

    c.  The defendant shall disclose all assets and liabilities to the probation officer. The defendant shall not transfer, sell, give-away, or otherwise convey any asset, without first consulting with the probation officer.

    d.  If the defendant owns or maintains interest in any profit or nonprofit entity, you shall, upon request, surrender and/or make available for review, any and all documents and records of said profit or nonprofit entity to the probation officer.

    e.  The defendant shall, upon request of the probation officer, complete a personal financial affidavit and authorize release of any and all financial information, to include income and tax return records, by execution of a Release of Financial Information form, or by any other appropriate means.

### Acknowledgment of Conditions

I have read or have had read to me the conditions of supervision set forth in this judgment and fully understand them and have been provided a copy of them.

I understand that upon a finding of a violation of probation or supervised release, the Court may (1) revoke supervision, (2) extend the term of supervision, and or (3) modify the conditions of supervision.

_____   _10-31-11_
Signature                    Date

_____   _10-31-11_
Probation Officer            Date

AO 245D    (Rev. 12/03) Judgment in a Criminal Case for Revocations
Sheet 5 — Criminal Monetary Penalties

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 05-CR-155-001-TCK** |
| | ) | **06-CR-071-001-TCK** |
| LISA JEANINE FINDLEY, | ) | |
| Defendant. | ) | |

### ORDER ON
### MODIFICATION OF CONDITIONS

COMES NOW Alton Livingston, United States Probation Officer of the Court, presenting an official report upon the conduct and attitude of Lisa Jeanine Findley who was placed on a twenty-four month term of supervised release as to Case Number 06-CR-071-001-TCK and a forty-eight month term of supervised release as Case Number 05-CR-155-001-TCK, by[1] the Honorable Terence C. Kern, in the Northern District of Oklahoma, on the 9th day of June 2010. Both terms of supervised release were ordered to be served concurrent, each with the other. The Court imposed the general terms and conditions of supervision theretofore adopted by the Court as well as the following special conditions:

The defendant shall abide by the "Special Financial Conditions."

The defendant shall abide by the "Special Search and Seizure Condition."

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT AND FOR CAUSE AS FOLLOWS:

---

[1]On October 30, 2006, Findley was sentenced to twenty months imprisonment in the custody of the Bureau of Prisons in connection with Case No. 05-CR-155-001-TCK, and a six-month imprisonment sentence was imposed in connection with Case No. 06-CR-071-001-TCK. Both terms of imprisonment were ordered to be served consecutively, each with the other. Findley was also sentenced to a five year term of supervised release as to Case No. 05-CR-155-001-TCK, and a three-year term of supervised release imposed as to Case No. 06-CR-071-001-TCK. Both terms of supervised release were ordered to be served concurrently, each with the other. Findley was released on bond from Rogers County authorities to federal supervision on June 2, 2008. On December 11, 2009, Findley was convicted and sentenced to two years in the custody of the Oklahoma Department of Corrections in connection with Tulsa County Case Number CF-2009-5480, for Uttering a Forged Instrument; False Pretense Over $500 or Con Game. On June 9, 2010, Findley's supervised release was revoked as to both Case number 05-CR-155-001-TCK and 06-CR-071-001-TCK. At sentencing Findley received an imprisonment sentence of twelve months as to each case, to be served concurrently, each with the other, and both federal cases were ordered to run consecutively to Tulsa County Case Number CF-2009-5480. On October 31, 2011, Findley was released from the Bureau of Prisons an her term of supervise release commenced. Her current term of supervised release is set to expire on October 30, 2015.

Modification of the conditions of supervision, to wit:

> The defendant shall participate in a program of mental health treatment, to include inpatient, with a treatment provider and on a schedule approved by the probation officer. The defendant shall waive any right of confidentiality in any records for mental health treatment to allow the probation officer to review the course of treatment and progress with the treatment provider.

### CAUSE

Findley has exhibited signs of depression stemming from family stressors, being a care giver for her sister, her inability to locate employment and coping with the ramifications of both her instant offense and revocation.

Based on this information, this officer recommends that the Court modify the defendant's conditions to include mental health treatment. Findley, after being advised of her right to assistance of counsel, agreed to said modification and executed a waiver of hearing and consent to modification of conditions as set forth herein. (See attached Waiver of Hearing.)

PRAYING THAT THE COURT will order modification of Findley's conditions of probation.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,
Larry Morris
Chief U. S. Probation Officer

by *s/Alton Livingston*

Alton Livingston
U. S. Probation Officer
Executed on August 17, 2012
DATE

Reviewed and approved:

*s/Michael Dan Woolridge*                          *August 17, 2012*
Michael Dan Woolridge, Supervising           DATE
U.S. Probation Officer

2

### ORDER

It is the order of the Court that the terms and conditions of probation are modified, to wit:

The defendant shall participate in a program of mental health treatment, to include inpatient, with a treatment provider and on a schedule approved by the probation officer. The defendant shall waive any right of confidentiality in any records for mental health treatment to allow the probation officer to review the course of treatment and progress with the treatment provider.

**IT IS SO ORDERED** this 23rd day of August, 2012.

**TERENCE KERN**
**United States District Judge**

PROB 49

Waiver of Hearing to Modify Conditions
of Probation/Supervised Release or Extend Term of Supervision

## UNITED STATES DISTRICT COURT
### for the
## NORTHERN DISTRICT OF OKLAHOMA

I have been advised and understand that I am entitled by law to a hearing and assistance of counsel before any unfavorable change may be made in my Conditions of Probation. By 'assistance of counsel', I understand that I have the right to be represented at the hearing by counsel of my own choosing if I am able to retain counsel. I also understand that I have the right to request the court to appoint counsel to represent me at such a hearing at no cost to myself if I am not able to retain counsel of my own choosing.

I hereby voluntarily waive my statutory right to a hearing and to assistance of counsel. I also agree to the following modification of my Conditions of Probation:

The defendant shall participate in a program of mental health treatment, to include inpatient, with a treatment provider and on a schedule approved by the probation officer. The defendant shall waive any right of confidentiality in any records for mental health treatment to allow the probation officer to review the course of treatment and progress with the treatment provider.

Witness: _____     Signed: _____
         Alton Livingston, USPO                 Lisa Findley

                              _____2-20-12_____
                                     Date



**AMERICAN HERITAGE BANK**
Member FDIC



# Notice of Special Handling


EXHIBIT
B

**TODD B PORTER**

BARNSDALL OK 74002

Account: 8709
Date: 07/25/14

Your account has been charged for the attached deposited check(s) that has been returned
for the reason shown with each item.

| Date | Amount | Reference# | Deposit Amt | Fee | Reason |
|------|--------|-----------|-------------|-----|--------|
| 07/23/2014 | 900.00 | 33300000066003 | CASH | .00 | NSF - Not Sufficient Funds |
| 07/23/2014 | 2,400.00 | 33300000066173 | 2,400.00 | .00 | NSF - Not Sufficient Funds |
| 07/21/2014 | 1,400.00 | 80001271613 | 1,400.00 | .00 | NSF - Not Sufficient Funds |

LISA J HOLDEN
TULSA, OK 74127-8130                                    2007

7-23-14

Pay to the order of Todd Porter    $ 900.00

Nine hundred + no/100                Dollars

**Bank of America**
ACH R/T 103000017

⑈103000017⑈  7476⑈ 2007

Item# 33300000066003 07/23/2014 $900.00
Reason: NSF - Not Sufficient Funds

LISA J HOLDEN
TULSA, OK 74127-8130                                    2006

7-23-14

Pay to the
Order of Todd Porter    $ 2400.00

Twenty four hundred + no/100            Dollars

**Bank of America**
ACH R/T 103000017

For _____

⑈103000017⑈  7476⑈ 2006

Item# 33300000066173 07/23/2014 $2,400.00
Reason: NSF - Not Sufficient Funds

LISA J HOLDEN

TULSA, OK 74127-8130

2004

25-1/1030 OK
8027

$7 - 21 - 14$

Date

Pay to the
Order of Todd B. Porter                    $ 17400.00

Fourteen hundred & no/100 ————————— Dollars

**Bank of America**

ACH R/T-103000017

For _____

Lisa H. Holden

⑆ 103000017⑆    ?4,?6⑈ 2004

Item# 80001271613  07/21/2014  $1,400.00
Reason: NSF - Not Sufficient Funds

*103100616*
07/25/2014
5250010396339
This is a LEGAL COPY of your
check. You can use it the same way
you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

American
Heritage

NSF

**LISA J HOLDEN**
**TULSA, OK 74127-8130**

2007
29-1/1030 OK
8037

7-23-14 Date

Pay to the
Order of  Todd Porter                    $ 900.00/xx

Nine hundred + no/100                    Dollars

**Bank of America**
ACH R/T 103000017

For

Lisa J Holden

⑈103000017⑈      7476  2007

⑈103000017⑈   3050065374476   2007      0000090000

---

Do Not Redeposit

*103100616*
07/25/2014
5250010396341
This is a LEGAL COPY of your
check. You can use it the same way
you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

American
Heritage

NSF

**LISA J HOLDEN**
**TULSA, OK 74127-8130**

2004
29-1/1030 OK
8037

7-21-14 Date

Pay to the
Order of  Todd B. Porter                  $ 1400.00/xx

Fourteen hundred  no/100  RESUBMIT        Dollars

**Bank of America**
ACH R/T 103000017

For

Lisa J Holden

⑈103000017⑈      7476  2004

⑈103000017⑈   3050065374476   2004      0000140000

---

*103100616*
07/25/2014
5250010396340
This is a LEGAL COPY of your
check. You can use it the same way
you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

American
Heritage

NSF

**LISA J HOLDEN**
**TULSA, OK 74127-8130**

2006
29-1/1030 OK
8037

7-23-14 Date

Pay to the
Order of  Todd Porter                     $ 2400.00/xx

Twenty four hundred + no/100             Dollars

**Bank of America**
ACH R/T 103000017

For

Lisa J Holden

⑈103000017⑈      7476  2006

⑈103000017⑈   3050065374476   2006      0000240000



**AMERICAN
HERITAGE
BANK**
Member FDIC

# Notice of Special Handling
## CHARGEBACK

**TODD B PORTER**

**BARNSDALL OK 74002**

Account:    8709
Date:  07/28/14

Your account has been charged for the attached deposited check(s) that has been returned for the reason shown with each item.

| Date | Amount | Reference# | Deposit Amt | Fee | Reason |
|------|--------|-----------|-------------|-----|--------|
| 07/22/2014 | 450.00 | 33300000065967 | 450.00 | .00 | NSF - Not Sufficient Funds |



Item# 33300000065967  07/22/2014  $450.00
Reason: NSF - Not Sufficient Funds

NSF

*103100616*
07/28/2014
5250010400528

This is a LEGAL COPY of your
check. You can use it the same way
you would use the original check.

RETURN REASON (A)
NOT SUFFICIENT FUNDS

**American
Heritage**

07/22/2014 3300000065967 E1031006167

LISA J HOLDEN
TULSA, OK 74127-8130

2005

35-1/1030 OK
8037

Do Not Redeposit 7-22-14

RESUBMIT

Date

Pay to the
Order of _____ Jadd Por _____ $ 450.00/xx

_____ four hundred fifty _____ Dollars

**Bank of America**

ACH R/T 103000017

For _____

⑆103000017⑆ 7476 2005

⑆103000017⑆ 3050065374 76⑈ 2005 ⑇000004 5000⑈

### IN THE UNITED STATES DISTRICT COURT FOR
### THE NORTHERN DISTRICT OF OKLAHOMA



### SPECIAL FINANCIAL CONDITIONS

1.  You shall maintain a single checking account in your name. You shall deposit into this account all income, monetary gains or other pecuniary proceeds, and make use of this account for payment of all personal expenses. All other bank accounts must be disclosed to the United States Probation Officer.

2.  You shall not make application for any loan or enter into any credit arrangement, without first consulting with the United States Probation Officer.

3.  You shall disclose all assets and liabilities to the United States Probation Officer. You shall not transfer, sell, give-away, or otherwise convey any assets, without first consulting with the United States Probation Officer.

4.  If you maintain interest in any business or enterprise, you shall, upon request, surrender and/or make available for review, any and all documents and records of said business or enterprise to the United States Probation Officer.

5.  You shall, upon request of the United States Probation Officer, authorize release of any and all financial information, to include income tax return records, by execution of a Release of Financial Information form, or by any other appropriate means.

*I have read (or had read to me) the above procedures. I fully understand these procedures and have been given a copy of this document.*

Signed : _Lisa Findley_
　　　　　　Lisa Findley

Date: _10-31-11_

Witness : _Alton Livingston_
　　　　　Alton Livingston, U.S. Probation Officer

Date: _10-31-11_



USAA
FEDERAL
SAVINGS
BANK



EXHIBIT

D

LISA HOLDEN

CLEVELAND OK 74020-0623

| | ACCOUNT NUMBER |
|---|---|
| 3 | S71-4 |
| 30 | STATEMENT DATE |
| | 01/30/12 |

PAGE      1

| BALANCE LAST STATEMENT | NO. OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 0.00 | 36 | 8,978.77 | 3 | 4,475.05 | .00 | 4503.72OD |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| This Statement | 0.00 | 0.00 |
| This Year's Statements | 0.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

ARE YOU SAVING FOR AN EMERGENCY OR RETIREMENT? USAA
CERTIFICATES OF DEPOSIT MAY BE RIGHT FOR YOU. GO TO USAA.COM
OR GIVE US A CALL AT 1-800-531-8722(USAA) TO LEARN MORE.

DEPOSITS AND OTHER CREDITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION
| 12/30 | 25.00 INTERNET DEPOSIT |
| 01/06 | 4,450.00 USAA FUNDS TRANSFER CR |
| 01/30 | 0.05 INTEREST PAID |

OTHER DEBITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION
| 01/06 | 25.00 RETURNED DEPOSIT ITEM | | |
| 01/09 | 3.85 POS DEBIT | 010812 | |
| | 1301 NORTH SEWELL ROAD130PAWNEE | | OK |
| 01/09 | 7.21 POS DEBIT | 010912 | |
| | 0207 WAL-SAMS0207 WAL-SAMCLEVELAND | | OK |
| 01/09 | 10.48 POS DEBIT | 010712 | |
| | 210 W CADDO210 W CADDO    CLEVELAND | | OK |
| 01/09 | 10.77 POS DEBIT | 010812 | |
| | 400 HARRISON ST400 HARRISPAWNEE | | OK |
| 01/09 | 18.37 POS DEBIT | 010712 | |
| | 400 HARRISON ST400 HARRISPAWNEE | | OK |
| 01/09 | 36.23 POS DEBIT | 010812 | |
| | 510 SEWELL510 SEWELL    PAWNEE | | OK |
| 01/09 | 40.00 DEBIT CARD PURCHASE | 010712 | |
| | 210 W CADDO | CLEVELAND | OK |
| 01/10 | 38.00 DEBIT CARD PURCHASE | 010912 | |
| | 210 .W CADDO | CLEVELAND | OK |



FDIC
INSURED


USAA
FEDERAL
SAVINGS
USAA BANK

LISA HOLDEN

CLEVELAND OK 74020-0623

PAGE 2

| BALANCE LAST STATEMENT | NO. OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 0.00 | 36 | 8,978.77 | 3 | 4,475.05 | .00 | 4503.72OD |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| This Statement | 0.00 | 0.00 |
| This Year's Statements | 0.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

OTHER DEBITS

DATE..........AMOUNT.TRANSACTION DESCRIPTION

| 01/12 | 6.53 POS DEBIT | 011212 |
| | HWY 412 CIMMARON TURNPHWYLONE CHIMNEY OK |
| 01/12 | 28.00 POS DEBIT | 011212 |
| | 1115 E. PROSPECT1115 E. PPONCA CITY | OK |
| 01/12 | 91.71 POS DEBIT | 011212 |
| | 702 FIR702 FIR | PERRY | OK |
| 01/12 | 424.02 POS DEBIT | 011212 |
| | 0823 WAL-SAMS0823 WAL-SAMPONCA CITY | OK |
| 01/13 | 31.35 DEBIT CARD PURCHASE | 011212 |
| | 1535 E. HUBBARD RD | PONCA CITY | OK |
| 01/13 | 129.70 POS DEBIT | 011312 |
| | 510 SEWELL510 SEWELL | PAWNEE | OK |
| 01/13 | 200.79 POS DEBIT | 011312 |
| | 0207 WAL-SAMS0207 WAL-SAMCLEVELAND | OK |
| 01/13 | 1,200.00 WIRE OUT |
| | 004120113269587 |
| 01/13 | 20.00 WIRE FEE |
| | 0041201132695 |
| 01/17 | 22.29 DEBIT CARD PURCHASE | 011212 |
| | 2800 N 5TH | PONCA CITY | OK |
| 01/17 | 23.75 DEBIT CARD PURCHASE | 011212 |
| | 2550 N HIGHWAY 66 | CATOOSA | OK |
| 01/17 | 26.39 POS DEBIT | 011612 |
| | 400 HARRISON ST400 HARRISPAWNEE | OK |
| 01/17 | 28.83 DEBIT CARD PURCHASE | 011312 |
| | 400 HARRISON ST | PAWNEE | OK |
| 01/17 | 36.50 DEBIT CARD PURCHASE | 011512 |
| | 2224 N WASHINGTON ST | STILLWATER | OK |
| 01/17 | 39.00 DEBIT CARD PURCHASE | 011212 |
| | 22050 COUNTY ROAD | MORRISON | OK |

FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

LISA HOLDEN

CLEVELAND OK 74020-0623

| BALANCE LAST STATEMENT | NO. OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
| --- | --- | --- | --- | --- | --- | --- |
| 0.00 | 36 | 8,978.77 | 3 | 4,475.05 | .00 | 4503.72OD |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
| --- | --- | --- |
| This Statement | 0.00 | 0.00 |
| This Year's Statements | 0.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

OTHER DEBITS

| DATE | AMOUNT | TRANSACTION DESCRIPTION | | |
| --- | --- | --- | --- | --- |
| 01/17 | 49.89 | POS DEBIT | 011612 | |
| | | 1301 NORTH SEWELL ROAD130PAWNEE | | OK |
| 01/17 | 56.00 | DEBIT CARD PURCHASE | 011512 | |
| | | 3920 W 6TH ST | STILLWATER | OK |
| 01/17 | 59.80 | POS DEBIT | 011512 | |
| | | 202 NORTH PERKINS ROAD202STILLWATER | | OK |
| 01/17 | 91.35 | POS DEBIT | 011512 | |
| | | 605 N. PERKINS RD.605 N. STILLWATER | | OK |
| 01/17 | 121.49 | DEBIT CARD PURCHASE | 011312 | |
| | | 367 N. BROADWAY | CLEVELAND | OK |
| 01/17 | 160.81 | POS DEBIT | 011512 | |
| | | 2211 NORTH PERKINS RD.221STILLWATER | | OK |
| 01/17 | 397.45 | DEBIT CARD PURCHASE | 011212 | |
| | | 4372 N PLEASANTVIEW RD | PONCA CITY | OK |
| 01/17 | 415.49 | POS DEBIT | 011512 | |
| | | 4241 WAL-SAMS4241 WAL-SAMSTILLWATER | | OK |
| 01/17 | 566.37 | DEBIT CARD PURCHASE | 011212 | |
| | | 3010 N 14TH ST | PONCA CITY | OK |
| 01/24 | 55.50 | POSTED DEBIT | | |
| 01/24 | 55.85 | POSTED DEBIT | | |
| 01/24 | 4,450.00 | POSTED DEBIT | | |

ACCOUNT BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
| --- | --- | --- | --- |
| 12/30 | .00 | 01/12 | 3,734.83 |
| 12/30 | 25.00 | 01/13 | 2,152.99 |
| 01/06 | 4,450.00 | 01/17 | 57.58 |
| 01/09 | 4,323.09 | 01/24 | 4,503.77OD |
| 01/10 | 4,285.09 | 01/30 | 4,503.72OD |

FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

LISA HOLDEN

CLEVELAND OK  74020-0623

| | ACCOUNT NUMBER |
|---|---|
| 3 | 671-4 |
| 30 | STATEMENT DATE |
| | 01/30/12 |

PAGE    4

| BALANCE LAST STATEMENT | NO. OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 0.00 | 36 | 8,978.77 | 3 | 4,475.05 | .00 | 4503.72OD |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| This Statement | 0.00 | 0.00 |
| This Year's Statements | 0.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals on this chart.

* * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
32 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.05%.   THIS
BRINGS YOUR YTD INTEREST PAID TO          0.05.

FDIC
INSURED


USAA
FEDERAL
SAVINGS
USAA BANK

LISA HOLDEN

BROKEN ARROW OK 74014-0000

| | ACCOUNT NUMBER |
|---|---|
| 0 | .671-4 |
| 30 | STATEMENT DATE |
| | 02/28/12 |

PAGE     1

| BALANCE LAST STATEMENT | NO. OF DEBITS PAID | TOTAL AMOUNT OF DEBITS PAID | NO. OF DEP | TOTAL AMOUNT OF DEPOSITS MADE | SERVICE CHARGES | BALANCE THIS STATEMENT |
|---|---|---|---|---|---|---|
| 4503.72OD | 2 | 896.23 | 8 | 896.23 | .00 | 4503.72OD |

Please examine immediately and report if incorrect. If no report is received within 60 days, the account will be considered correct.

| | TOTAL NONSUFFICIENT FUNDS (NSF) FEES | TOTAL OVERDRAFT (OD) FEES |
|---|---|---|
| This Statement | 0.00 | 0.00 |
| This Year's Statements | 0.00 | 0.00 |

Note: Fee reversals/refunds made by USAA will not reduce the totals in this chart.

ARE YOU SAVING FOR AN EMERGENCY OR RETIREMENT?   USAA
CERTIFICATES OF DEPOSIT MAY BE RIGHT FOR YOU. GO TO USAA.COM
OR GIVE US A CALL AT 1-800-531-8722(USAA) TO LEARN MORE.

```
    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
02/01          26.39 ATM/POS ADJ CR
02/01          49.89 ATM/POS ADJ CR
02/01          59.80 ATM/POS ADJ CR
02/01          91.35 ATM/POS ADJ CR
02/01         160.81 ATM/POS ADJ CR
02/01         415.49 ATM/POS ADJ CR
02/01          36.50 DEBIT CARD REFUND
02/01          56.00 DEBIT CARD REFUND

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
02/03         400.00 DEBIT CARD RECOVERY
02/23         496.23 DEBIT CARD RECOVERY

ACCOUNT BALANCE SUMMARY
        DATE.........BALANCE      DATE.........BALANCE
        01/30     4,503.72OD     02/03     4,007.49OD
        02/01     3,607.49OD     02/23     4,503.72OD
```

FDIC
INSURED

EXHIBIT
E

## RENTAL-PURCHASE AGREEMENT

Date: Jan 18, 2013
Lessor: Rent-A-Center
620 E Charles Page Blvd
Sand Springs    OK 74063-8506
(918) 241-0280 LOC: 2038-M

Agreement Number: L3824961
Consumer: HOLDEN, LISA

Sand Springs    OK 74063-7612
(918) 232-5729 MAP CODE: 1    RT: 01

**TERMS OF AGREEMENT:** As used in this Agreement, "you" and "your" mean the person(s) signing the Agreement as lessee/renter/consumer; "we" and "our" mean the lessor/owner (the rental company); "property" means the items described in the disclosures; and "lease" means this Rental-Purchase Agreement including the disclosures.

### RENTAL-PURCHASE DISCLOSURES

**DESCRIPTION OF PROPERTY:**

| Item # | Item Description | Serial # | Model # | Condition of Property: |
|---|---|---|---|---|
| 0203807575 | APPLIANCE /GAS RANGE | R24936811 | WFG510S0AW | NEW |

**RENTAL TERM:** Weekly    Rental payments are due at the beginning of each term that you choose to rent the property. There are no refunds if you choose to return the property before the end of the term.

**INITIAL PAYMENT:** Payments are due at the beginning of each term that you choose to lease the property. Your initial payment will include the following charges:

| Rental Payment | Optional Liability Damage Waiver | Tax | Total |
|---|---|---|---|
| $68.55 | $3.43 | $6.07 | $78.05 |

**RENEWAL PAYMENTS:** You are not obligated to renew this Agreement beyond the initial term. However, if you choose to renew this Agreement beyond the initial term, or beyond any subsequent renewal term, you may do so by making an advance rental payment on the Saturday of each    Week, or you may choose to make advance rental payments on a Semi-Monthly    or    Monthly    basis. Your first renewal payment is due    Saturday    Feb 02, 2013

| Payments | Rental Payment | Day Optional Liability Damage Waiver | Date Tax | Total |
|---|---|---|---|---|
| Weekly | $31.99 | $1.60 | $2.83 | $36.42 |
| Semi-Monthly | $69.25 | $3.46 | $6.13 | $78.84 |
| Monthly | $138.61 | $6.93 | $12.27 | $157.81 |

**OTHER CHARGES:**

Optional Liability Damage Waiver Fee
$6.93 /Month
$3.46 /Semi-Month
$1.60 /Week

Reinstatement Fee
$5.00    if payments are made monthly.
$3.00    if payments are made semi-monthly or weekly.

NSF Check Fee
$15.00

**Expedited Payment Fee:**    $1.50    fee for a telephone payment assisted by a customer service representative who will immediately confirm that the payment has been applied to your account.

**TOTAL COST:** If you choose to acquire ownership, you must rent the property for the number of weeks, semi-months or months shown below. The Total Cost does not include other charges or fees. You should read the contract for an explanation of these charges and fees.

**Weekly**    If you choose to acquire ownership through weekly rental, you will make    64    payments: the initial rental payment of    $68.55 ,    62    weekly payments of    $31.99    and a final payment of    $27.42    for a total of    $2,079.35    in rent and sales tax of    $183.96    for a Total Cost of    $2,263.31

**Semi-monthly**    If you choose to acquire ownership through semi-monthly rental, you will make    30    payments: the initial rental payment of    $68.55 ,    28    semi-monthly payments of    $69.25    and a final payment of    $69.25    for a total of    $2,076.80    in rent and sales tax of    $183.84    for a Total Cost of    $2,260.64 .

**Monthly**    If you choose to acquire ownership through monthly rental, you will make    16    payments: the initial rental payment of    $68.55 ,    14    monthly payments of    $138.61    and a final payment of    $69.30    for a total of    $2,076.39    in rent and sales tax of    $183.98    for a Total Cost of    $2,252.37 .

You do not own the property. You do not acquire ownership rights unless you have complied with the ownership terms of the agreement. If you choose to renew this Agreement on a frequency different from your initial rental payment term, your total amount will be calculated based on the above amounts and on the number of payments made at each frequency. Free rent allowance will not reduce total rent or purchase-option amounts. Sales taxes are subject to changes in the applicable tax rate.

**THE CASH PRICE OF THE PROPERTY:**    $1,039.68, plus sales tax.

**EARLY PURCHASE OPTION:** If you wish to purchase the rental property you may do so at any time by the payment of    80    % of the remaining Total Cost calculated at that time. In addition, you may purchase the property within the first 90 days after the date of this agreement by paying us an amount equal to the Cash Price minus the total of all rental payments (excluding tax) made by you, plus tax.

**RISK OF LOSS AND DAMAGES:** You are liable for the destruction, loss and damage to property in excess of normal wear and tear. If the property is lost or destroyed, your liability will not be greater than the early purchase option price. If it is damaged, your liability will be the lesser of that price or our reasonable cost to repair.

**OPTIONAL LIABILITY DAMAGE WAIVER:** You may purchase a waiver of liability from us for damage to or destruction of the property. The purchase of such waiver is optional. The amount of the waiver is the greater of 5% of the rental payment or $1.00.

**TYPE OF TRANSACTION:** THIS IS A RENTAL TRANSACTION.

**REINSTATEMENT:** If you fail to make a timely payment, you may reinstate this rental-purchase agreement without losing rights or options previously acquired, by arranging with us to make the past due payments, within 2 days after the due date of the payment and by arranging to pay any fees due or by returning the property within 2 days if requested to do so by us. If the rental property is returned to us during the reinstatement period, other than through judicial process, the right to reinstate the agreement shall be extended for a period of not less than 30 days after the return of the property. Upon reinstatement, we shall provide you with the same rental property or substitute property of comparable quality and condition.

**TERMINATION:** You may terminate the rental-purchase agreement without penalty by voluntarily surrendering or returning the goods in good repair, reasonable wear and tear excepted, along with any past due rental payments at any time.

**WARRANTY AND MAINTENANCE:** We are responsible for maintaining or servicing the goods while they are being rented. We will not

12/05/2013    10:41AM (GMT-06:00)

| Semi-Monthly | $69.25 | $3.48 | | $6.13 | |
|---|---|---|---|---|---|
| Monthly | $138.61 | $6.93 | | $6.13 | $78.84 |

**OTHER CHARGES:**

Optional Liability Damage Waiver Fee
$6.93 /Month
$3.46 /Semi-Month
$1.50 /Week

Reinstatement Fee
$5.00   if payments are made monthly.
$3.00   if payments are made semi-monthly or weekly.

NSF Check Fee
$15.00

**Expedited Payment Fee:**   $1.50   fee for a telephone payment assisted by a customer service representative who will immediately confirm that the payment has been applied to your account.

**TOTAL COST:** If you choose to acquire ownership, you must rent the property for the number of weeks, semi-months or months shown below. The Total Cost does not include other charges or fees. You should read the contract for an explanation of these charges and fees.

**Weekly**   If you choose to acquire ownership through weekly rental, you will make    64   payments: the initial rental payment of   $68.55 ,   62   weekly payments of   $31.99   and a final payment of   $27.42   for a total of $2,079.35   in rent and sales tax of   $183.96   for a Total Cost of   $2,263.31 .

**Semi-monthly**   If you choose to acquire ownership through semi-monthly rental, you will make    30   payments: the initial rental payment of   $68.55 ,   28 semi-monthly payments of   $69.25   and a final payment of   $69.25   for a total of $2,076.80   in rent and sales tax of   $183.84   for a Total Cost of   $2,260.64 .

**Monthly**   If you choose to acquire ownership through monthly rental, you will make    16   payments: the initial rental payment of   $68.55 ,   14   monthly payments of   $138.61   and a final payment of   $69.30   for a total of $2,078.39   in rent and sales tax of   $183.98   for a Total Cost of   $2,262.37 .

You do not own the property. You do not acquire ownership rights unless you have complied with the ownership terms of the agreement. If you choose to renew this Agreement on a frequency different from your initial rental payment term, your total amount will be calculated based on the above amounts and on the number of payments made at each frequency.   Free rent allowance will not reduce total rent or purchase-option amounts. Sales taxes are subject to change in the applicable tax rate.

**THE CASH PRICE OF THE PROPERTY:**   $1,039.68, plus sales tax.

**EARLY PURCHASE OPTION:**   If you wish to purchase the rental property you may do so at any time by the payment of   80 % of the remaining Total Cost calculated at that time.  In addition, you may purchase the property within the first 90 days after the date of this agreement by paying us an amount equal to the Cash Price minus the total of all rental payments (excluding tax) made by you, plus tax.

**RISK OF LOSS AND DAMAGE:**   You are liable for the destruction, loss and damage to property in excess of normal wear and tear.  If the property is lost or destroyed, your liability will not be greater than the early purchase option price.  If it is damaged, your liability will be the lesser of that price or our reasonable cost to repair.

**OPTIONAL LIABILITY DAMAGE WAIVER:**   You may purchase a waiver of liability from us for damage to or destruction of the property.  The purchase of such waiver is optional.  The amount of the waiver is the greater of 5% of the rental payment or $1.00.   **THIS IS A RENTAL TRANSACTION.**

**REINSTATEMENT:**   If you fail to make a timely payment, you may reinstate this rental-purchase agreement without losing rights or options previously acquired, by arranging with us to make the past due payments, within 2 days after the due date of the payment and by arranging to pay any fees due or by returning the property within 2 days if requested to do so by us.  If the rental property is returned to us during the reinstatement period, other than through judicial process, the right to reinstate the agreement shall be extended for a period of not less than 30 days after the date of the return of the property.  Upon reinstatement, we shall provide you with the same rental property or substitute property of comparable quality and condition.

**TERMINATION:**   You may terminate the rental-purchase agreement without penalty by voluntarily surrendering or returning the goods in good repair, reasonable wear and tear excepted, along with any past due rental payments at any time.

**WARRANTY AND MAINTENANCE:**   We are responsible for maintaining or servicing the goods while they are being rented. We will not be responsible for the costs or the results of any unauthorized repairs or damage caused by improper use. If any part of a manufacturer's warranty covers the goods at the time you acquire ownership of them, it shall be transferred to you, if allowed by the terms of the warranty.

**OUR RIGHTS TO TAKE POSSESSION:**   If you do not renew this lease or if you breach this lease, we have the right to possession of the property.  If this happens, you agree to return the property or make arrangements for us to take possession of it.

**ASSIGNMENT:**   We may sell, transfer, or assign this Rental-Purchase Agreement, but agree to notify you of any change.

**TITLE AND TAXES:**   We retain title to the property at all times and will pay any taxes which might be levied on the property.

**FORBIDDEN ACTS:**   You cannot sell, mortgage, pawn, pledge, encumber, hock or dispose of this property. Except for property that is designed to be moveable (e.g., a laptop computer or a tablet), you cannot move the property from your current residence without our written agreement. Each of these acts is a breach of this lease and causes it to terminate. If you move the property without our prior agreement or fail to return the property to us in accordance with 21 O.S. 2001 § 1451 (Embezzlement), you shall be in breach of this Agreement giving us the right to immediate possession of the property and subjecting you to prosecution under applicable law.

**ARBITRATION:**   An Arbitration Agreement comes with and is incorporated into this rental purchase agreement. You should read the Arbitration Agreement before signing this agreement.

**NOTICE TO CONSUMER:**   Do not sign this agreement before you read it, including the Arbitration Agreement, or if it contains blank spaces. You are entitled to a copy of the agreement you sign. Keep it to protect your legal rights.

YOU AGREE BY SIGNING THIS LEASE THAT (1) YOU READ IT, (2) YOU UNDERSTAND IT, AND (3) YOU RECEIVED A SIGNED COPY OF IT.

Date _____   Consumer _____

Lessor _____   Consumer _____

Rental contract pledged as collateral security to Chase Manhattan Bank as an administrative agent for the Bank group.
RACOOK1E v2.1 rev. 11/16/12



EXHIBIT

**RENTAL-PURCHASE AGREEMENT**
Agreement Number: L3825202
Consumer: HOLDEN, LISA

Date: Mar 23, 2013
Lessor: Rent-A-Center
620 E Charles Page Blvd
Sand Springs   OK 74063-8506
(918) 241-0280 LOC: 2038-M

Sand Springs   OK 74063-7612
(918) 232-5729 MAP CODE: 1   RT: 01

**TERMS OF AGREEMENT:** As used in this Agreement, "you" and "your" mean the person(s) signing the Agreement as lessee/renter/consumer; "we" and "our" mean the lessor/owner (the rental company); "property" means the items described in the disclosures; and "lease" means this Rental-Purchase Agreement including the disclosures.

**DESCRIPTION OF PROPERTY:**                    RENTAL-PURCHASE DISCLOSURES

| Item # | Item Description | Serial # | Model # | Condition of Property: |
|---|---|---|---|---|
| 0203807632 | FURNITURE /BEDROOM | 5PC MODERN BRM | B165-5 | NEW |
| 0203807645 | FURNITURE /QUEEN MATTRES | QN MATT SPLIT | 4000QSPWFRAC | NEW |
| 0203807154 | ACCESSORY /BED FRAME | FRAME | 35G | USED |

**RENTAL TERM:** Weekly           Rental payments are due at the beginning of each term that you choose to rent the property. There are no refunds if you choose to return the property before the end of the term.

**INITIAL PAYMENT:** Payments are due at the beginning of each term that you choose to lease the property. Your initial payment will include the following charges:

| Rental Payment | Optional Liability Damage Waiver | Tax | Total |
|---|---|---|---|
| $26.99 | $1.35 | $2.39 | $30.73 |

**RENEWAL PAYMENTS:** You are not obligated to renew this Agreement beyond the initial term. However, if you choose to renew this Agreement beyond the initial term, or beyond any subsequent renewal term, you may do so by making an advance rental payment on the Saturday of each   Week, or you may choose to make advance rental payments on a **Semi-Monthly**  or          **Monthly** basis. Your first renewal payment is due          Saturday          Mar 30, 2013

| Payments | Rental Payment | Day | Date | Tax | Total |
|---|---|---|---|---|---|
| | | Optional Liability Damage Waiver | | | |
| Weekly | $26.99 | $1.35 | | $2.39 | $30.73 |
| Semi-Monthly | $58.42 | $2.92 | | $5.17 | $66.51 |
| Monthly | $116.93 | $5.85 | | $10.35 | $133.13 |

**OTHER CHARGES:**

| Optional Liability Damage Waiver Fee | Reinstatement Fee | NSF Check Fee |
|---|---|---|
| $5.85 /Month | $5.00   if payments are made monthly. | $15.00 |
| $2.92 /Semi-Month | $3.00   if payments are made semi-monthly or weekly. | |
| $1.35 /Week | | |

**Expedited Payment Fee:**  $1.50   fee for a telephone payment assisted by a customer service representative who will immediately confirm that the payment has been applied to your account.

**TOTAL COST:** If you choose to acquire ownership, you must rent the property for the number of weeks, semi-months or months shown below. The Total Cost does not include other charges or fees. You should read the contract for an explanation of these charges and fees.

Weekly       If you choose to acquire ownership through weekly rental, you will make      88   payments: the initial rental payment of      $26.99 ,     86   weekly payments of      $26.99   and a final payment of      $26.99   for a total of      $2,375.12   in rent and sales tax of      $210.32   for a Total Cost of      $2,585.44 .

Semi-monthly    If you choose to acquire ownership through semi-monthly rental, you will make      42   payments: the initial rental payment of      $26.99 ,     40   semi-monthly payments of      $58.42   and a final payment of      $8.06   for a total of      $2,371.85   in rent and sales tax of      $209.90   for a Total Cost of  $2,581.75 .

Monthly       If you choose to acquire ownership through monthly rental, you will make      · 22   payments: the initial rental payment of      $26.99 ,     20   monthly payments of      $116.93   and a final payment of      $8.08   for a total of      $2,373.67   in rent and sales tax of      $210.11   for a Total Cost of      $2,583.78 .

You do not own the property. You do not acquire ownership rights unless you have complied with the ownership terms of the agreement. If you choose to renew this Agreement on a frequency different from your initial rental payment term, your total amount will be calculated based on the above amounts and on the number of payments made at each frequency. Free rent allowance will not reduce total rent or purchase-option amounts. Sales taxes are subject to changes in the applicable tax rate.

**THE CASH PRICE OF THE PROPERTY:**       $1,265.11 , plus sales tax.

**EARLY PURCHASE OPTION:** If you wish to purchase the rental property you may do so at any time by the payment of  80 % of the remaining Total Cost calculated at that time. In addition, you may purchase the property within the first 90 days after the date of this agreement by paying us an amount equal to the Cash Price minus the total of all rental payments (excluding tax) made by you, plus tax.

**RISK OF LOSS AND DAMAGE:** You are liable for the destruction, loss and damage to property in excess of normal wear and tear. If the property is lost or destroyed, your liability will not be greater than the early purchase option price. If it is damaged, your liability will be the lesser of that price or our reasonable cost to repair.

**OPTIONAL LIABILITY DAMAGE WAIVER:** You may purchase a waiver of liability from us for damage to or destruction of the property. The purchase of such waiver is optional. The amount of the waiver is the greater of 5% of the rental payment or $1.00. **THIS IS A RENTAL TRANSACTION.**

**REINSTATEMENT:** If you fail to make a timely payment, you may reinstate this rental-purchase agreement without losing rights or options previously acquired, by arranging with us to make the past due payments, within 2 days after the due date of the payment and by arranging to pay any fees due or by returning the property within 2 days if requested to do so by us. If the rental property is returned to us during the reinstatement period, other than through judicial process, the right to reinstate the agreement shall be extended for a period of not less than 30 days after the date of the return of the property. Upon reinstatement, we shall provide you with the same rental property or substitute property of comparable quality and condition.

**TERMINATION:** You may terminate the rental-purchase agreement without penalty by voluntarily surrendering or returning the goods in good repair, reasonable wear and tear excepted, along with any past due rental payments at any time.

**WARRANTY AND MAINTENANCE:** We are responsible for maintaining or servicing the goods while they are being rented. We will not

12/05/2013   10:41AM (GMT-06:00)

| Monthly | $116.93 | $5.85 | $10.35 | $133.13 |
|---|---|---|---|---|

**OTHER CHARGES:**

**Optional Liability Damage Waiver Fee**
$5.85 /Month
$2.92 /Semi-Month
$1.35 /Week

**Reinstatement Fee**
$5.00   if payments are made monthly.
$3.00   if payments are made semi-monthly or weekly.

**NSF Check Fee**
$15.00

**Expedited Payment Fee:**   $1.50   fee for a telephone payment assisted by a customer service representative who will immediately confirm that the payment has been applied to your account.

**TOTAL COST:** If you choose to acquire ownership, you must rent the property for the number of weeks, semi-months or months shown below. The Total Cost does not include other charges or fees. You should read the contract for an explanation of these charges and fees.

**Weekly**   If you choose to acquire ownership through weekly rental, you will make   88   payments: the initial rental payment of   $26.99 ,   86   weekly payments of   $26.99   and a final payment of   $26.99   for a total of   $2,375.12   in rent and sales tax of   $210.32   for a Total Cost of   $2,585.44 .

**Semi-monthly**   If you choose to acquire ownership through semi-monthly rental, you will make   42   payments: the initial rental payment of   $26.99 ,   40 semi-monthly payments of   $58.42   and a final payment of   $8.06   for a total o   $2,371.85   in rent and sales tax of   $209.90   for a Total Cost of   $2,581.75 .

**Monthly**   If you choose to acquire ownership through monthly rental, you will make   22   payments: the initial rental payment of   $26.99 ,   20 monthly payments of   $116.93   and a final payment of   $8.08   for a total of   $2,373.67   in rent and sales tax of   $210.11   for a Total Cost of   $2,583.78 .

You do not own the property. You do not acquire ownership rights unless you have complied with the ownership terms of the agreement. If you choose to renew this Agreement on a frequency different from your initial rental payment term, your total amount will be calculated based on the above amounts and on the number of payments made at each frequency. Free rent allowance will not reduce total rent or purchase-option amounts. Sales taxes are subject to changes in the applicable tax rate.

**THE CASH PRICE OF THE PROPERTY:**   $1,265.11, plus sales tax.

**EARLY PURCHASE OPTION:** If you wish to purchase the rental property you may do so at any time by the payment of   80 % of the remaining Total Cost calculated at that time. In addition, you may purchase the property within the first 90 days after the date of this agreement by paying us an amount equal to the Cash Price minus the total of all rental payments (excluding tax) made by you, plus tax.

**RISK OF LOSS AND DAMAGES:** You are liable for the destruction, loss and damage to property in excess of normal wear and tear. If the property is lost or destroyed, your liability will not be greater than the early purchase option price. If it is damaged, your liability will be the lesser of that price or our reasonable cost to repair.

**OPTIONAL LIABILITY DAMAGE WAIVER:** You may purchase a waiver of liability from us for damage to or destruction of the property. The purchase of such waiver is optional. The amount of the waiver is the greater of 5% of the rental payment or $1.00.

**TYPE OF TRANSACTION:** THIS IS A RENTAL TRANSACTION.

**REINSTATEMENT:** If you fail to make a timely payment, you may reinstate this rental-purchase agreement without losing rights or options previously acquired, by arranging with us to make the past due payments, within 2 days after the due date of the payment and by arranging to pay any fees due or by returning the property within 2 days if requested to do so by us. If the rental property is returned to us during the reinstatement period, other than through judicial process, the right to reinstate the agreement shall be extended for a period of not less than 30 days after the date of the return of the property. Upon reinstatement, we shall provide you with the same rental property or substitute property of comparable quality and condition.

**TERMINATION:** You may terminate the rental-purchase agreement without penalty by voluntarily surrendering or returning the goods in good repair, reasonable wear and tear excepted, along with any past due rental payments at any time.

**WARRANTY AND MAINTENANCE:** We are responsible for maintaining or servicing the goods while they are being rented. We will not be responsible for the costs or the results of any unauthorized repairs or damage caused by improper use. If any part of a manufacturer's warranty covers the goods at the time you acquire ownership of them, it shall be transferred to you, if allowed by the terms of the warranty.

**OUR RIGHTS TO TAKE POSSESSION:** If you do not renew this lease or if you breach this lease, we have the right to possession of the property. If this happens, you agree to return the property or make arrangements for us to take possession of it.

**ASSIGNMENT:** We may sell, transfer, or assign this Rental-Purchase Agreement, but agree to notify you of any change.

**TITLE AND TAXES:** We retain title to the property at all times and will pay any taxes which might be levied on the property.

**FORBIDDEN ACTS:** You cannot sell, mortgage, pawn, pledge, encumber, hock or dispose of this property. Except for property that is designed to be moveable (e.g., a laptop computer or a tablet), you cannot move the property from your current residence without our written agreement. Each of these acts is a breach of this lease and causes it to terminate. If you move the property without our prior agreement or fail to return the property to us in accordance with 21 O.S. 2001 § 1451 (Embezzlement), you shall be in breach of this Agreement giving us the right to immediate possession of the property and subjecting you to prosecution under applicable law.

**ARBITRATION:** An Arbitration Agreement comes with and is incorporated into this rental purchase agreement. You should read the Arbitration Agreement before signing this agreement.

**NOTICE TO CONSUMER:** Do not sign this agreement before you read it, including the Arbitration Agreement, or if it contains blank spaces. You are entitled to a copy of the agreement you sign. Keep it to protect your legal rights.

YOU AGREE BY SIGNING THIS LEASE THAT (1) YOU READ IT, (2) YOU UNDERSTAND IT, AND (3) YOU RECEIVED A SIGNED COPY OF IT.

Date

Lessor

Consumer

Consumer

Rental contract pledged as collateral security to Chase Manhattan Bank as an administrative agent for the Bank group.
RACOK1E v2.1 rev. 11/15/12

LISA J HOLDEN

BOFA CORE CHECKING

**** **** 7476


EXHIBIT
G
PENGO-Bayonne-N.J

Last Posting Date 11/12/2014      Date/Time Printed 11/13/2014 12:27 PM EST

### Since Last Statement Summary

| | | | |
|---|---|---|---|
| Last Statement Date 10/22/2014 | | | |
| Balance Last Statement ($) | | | |
| Deposits/Credits (+) | # 1 | $759.68 | Holds (-) |
| Withdrawals/Debits (-) | # 0 | $0.00 | Pending Credits (+) |
| Available Balance ($) | | $0.00 | |

Some of the information was not available when this page was printed. Please ask your Bank of America banker to assist you
Balance Last Statement, Deposits/Credits, Withdrawals/Debits may not total to Available Balance.

| Date | Description | Type | Amount | Available Balance |
|---|---|---|---|---|
| 10/17/2014 | FORCE CLOSED ACCOUNT      FDES NMO 0003016 002757 | Credit | $759.68 | $0.00 |
| | Statement Period as of 09/20/2014 | | | |
| 08/26/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 08-25) CHECK #0000002010 | Credit | $850.00 | -$759.68 |
| 08/25/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 08-25    CHECK #0000002010 POSTING DATE 08-25-14 POST... | Fee | -$35.00 | -$1,609.68 |
| 08/25/2014 | Check 2010 | Single Check | -$850.00 | -$1,574.68 |
| 08/25/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 08-22) ELECTRONIC TRANSACTION | Credit | $25.00 | -$724.68 |
| 08/22/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 08-22    ELECTRONIC TRANSACTION POSTING DATE 08-22-14 POST... | Fee | -$35.00 | -$749.68 |

For additional information or service, please contact the Customer Service Center at 1-800-432-1000        **** **** 7476

\* = Item(s) included in Previous Statement(s).

| Date | Description | Type | Amount | Available Balance |
|------|-------------|------|--------|-------------------|
| 08/22/2014 | FASTRACK DES:RETURN FEE ID:2003 INDN:1400360000000104882270 CO ID:9020070470 PPD | Other Payment | -$25.00 | -$714.68 |
| | Statement Period as of 08/21/2014 | | | |
| 08/18/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 08-15) ELECTRONIC TRANSACTION | Credit | $25.00 | -$689.68 |
| 08/15/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 08-15 ELECTRONIC TRANSACTION POSTING DATE 08-15-14 POST... | Fee | -$35.00 | -$714.68 |
| 08/15/2014 | FASTRACK DES:RETURN FEE ID:2003 INDN:1400360000000104882270 CO ID:9020070470 PPD | Other Payment | -$25.00 | -$679.68 |
| 08/11/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 08-08) ELECTRONIC TRANSACTION | Credit | $25.00 | -$654.68 |
| 08/08/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 08-08 ELECTRONIC TRANSACTION POSTING DATE 08-08-14 POST... | Fee | -$35.00 | -$679.68 |
| 08/08/2014 | FASTRACK DES:RETURN FEE ID:2003 INDN:1400360000000104882270 CO ID:9020070470 PPD | Other Payment | -$25.00 | -$644.68 |
| 08/04/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 08-01) CHECK #0000002024 | Credit | $655.00 | -$619.68 |
| 08/01/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 08-01 CHECK #0000002024 POSTING DATE 08-01-14 POST... | Fee | -$35.00 | -$1,274.68 |
| 08/01/2014 | Check 2024 | Single Check | -$655.00 | -$1,239.68 |
| 08/01/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-31) CHECK #0000002023 | Credit | $550.00 | -$584.68 |
| 07/31/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-31 CHECK #0000002023 POSTING DATE 07-31-14 POST... | Fee | -$35.00 | -$1,134.68 |
| 07/31/2014 | Check 2023 | Single Check | -$550.00 | -$1,099.68 |
| 07/30/2014 | RETURNED ITEM CHARGEBACK FEE | Fee | -$12.00 | -$549.68 |

| Date | Description | Type | Amount | Available Balance |
|------|-------------|------|--------|-------------------|
| 07/30/2014 | Extended Overdrawn Balance Charge | Fee | -$35.00 | -$537.68 |
| 07/30/2014 | RETURN ITEM CHARGEBACK | Debit | -$400.00 | -$502.68 |
| 07/29/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-28) CHECK #0000002008 | Credit | $3,500.00 | -$102.68 |
| 07/28/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-28    CHECK #0000002008 POSTING DATE 07-28-14  POST... | Fee | -$35.00 | -$3,602.68 |
| 07/28/2014 | OVERDRAFT ITEM FEE FOR ACTIVITY OF 07-28    ELECTRONIC TRANSACTION POSTING DATE 07-28-14  POST... | Fee | -$35.00 | -$3,567.68 |
| 07/28/2014 | Check 2008 | Single Check | -$3,500.00 | -$3,532.68 |
| 07/28/2014 | Check 2003 | Single Check | -$62.24 | -$32.68 |
| 07/28/2014 | BKOFAMERICA MOBILE 07/26 3294770806 DEPOSIT    *MOBILE    OK | Deposit | $400.00 | $29.56 |
| 07/25/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-24) CHECK #0000002005 | Credit | $450.00 | -$370.44 |
| 07/24/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-24    CHECK #0000002005 POSTING DATE 07-24-14  POST... | Fee | -$35.00 | -$820.44 |
| 07/24/2014 | CHECK ORDER00823 DES:FEE    ID:U053164064    INDN:LISA J HOLDEN    CO ID:0000000823 PPD | Fee | -$20.00 | -$785.44 |
| 07/24/2014 | Check 2005 | Single Check | -$450.00 | -$765.44 |
| 07/24/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-23) CHECK #0000002007 | Credit | $900.00 | -$315.44 |
| 07/24/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-23) CHECK #0000002004 | Credit | $1,400.00 | -$1,215.44 |
| 07/24/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-23) CHECK #0000002006 | Credit | $2,400.00 | -$2,615.44 |

| Date | Description | | Type | Amount | Available Balance |
|------|-------------|---|------|--------|-------------------|
| 07/23/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-23 POSTING DATE 07-23-14 POST... | CHECK #0000002007 | Fee | -$35.00 | -$5,015.44 |
| 07/23/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-23 POSTING DATE 07-23-14 POST... | CHECK #0000002006 | Fee | -$35.00 | -$4,980.44 |
| 07/23/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-23 POSTING DATE 07-23-14 POST... | CHECK #0000002004 | Fee | -$35.00 | -$4,945.44 |
| 07/23/2014 | Check 2007 | | Single Check | -$900.00 | -$4,910.44 |
| 07/23/2014 | Check 2006 | | Single Check | -$2,400.00 | -$4,010.44 |
| 07/23/2014 | Check 2004 | | Single Check | -$1,400.00 | -$1,610.44 |
| 07/23/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-22) ELECTRONIC TRANSACTION | | Credit | $62.24 | -$210.44 |
| 07/23/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-22) CHECK #0000002005 | | Credit | $450.00 | -$272.68 |
| | Statement Period as of 07/23/2014 | | | | |
| 07/22/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-22 POSTING DATE 07-22-14 POST... | CHECK #0000002005 | Fee | -$35.00 | -$722.68 |
| 07/22/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-22 POSTING DATE 07-22-14 POST... | ELECTRONIC TRANSACTION | Fee | -$35.00 | -$687.68 |
| 07/22/2014 | Check 2005 | | Single Check | -$450.00 | -$652.68 |
| 07/22/2014 | Check 2003 | | Single Check | -$62.24 | -$202.68 |
| 07/22/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-21) CHECK #0000002002 | | Credit | $74.35 | -$140.44 |
| 07/22/2014 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 07-21) CHECK #0000002004 | | Credit | $1,400.00 | -$214.79 |

| Date | Description | Type | Amount | Available Balance |
|------|-------------|------|--------|-------------------|
| 07/21/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-21    CHECK #0000002004 POSTING DATE 07-21-14 POST... | Fee | -$35.00 | -$1,614.79 |
| 07/21/2014 | NSF: RETURNED ITEM FEE FOR ACTIVITY OF 07-21    CHECK #0000002002 POSTING DATE 07-21-14 POST... | Fee | -$35.00 | -$1,579.79 |
| 07/21/2014 | Check 2004 | Single Check | -$1,400.00 | -$1,544.79 |
| 07/21/2014 | Check 2002 | Single Check | -$74.35 | -$144.79 |
| 07/21/2014 | CHECKCARD 0719 PAWHUSKA SHORT ST    PAWHUSKA    OK 05140484201710009128031 | Debit | -$72.00 | -$70.44 |
| 07/16/2014 | DOLLAR GENERAL 07/16 #000401732 PURCHASE    HWY 11 N. OF OAK BARNSDALL    OK | Debit | -$3.05 | $1.56 |
| 07/14/2014 | AFFORDABLE FOO 07/14 #000568166 PURCHASE    AFFORDABLE FOOD    BARNSDALL    OK | Debit | -$5.80 | $4.61 |
| 07/14/2014 | DOLLAR GE HWY 07/12 #000220079 PURCHASE    DOLLAR GE HWY 11 BARNSDALL    OK | Debit | -$19.14 | $10.41 |
| 07/14/2014 | CHECKCARD 0712 FAST TRACKS    BARNSDALL    OK 24251374194093295511741 | Debit | -$8.70 | $29.55 |
| 07/14/2014 | CHECKCARD 0711 QT 3    01000033    COLLINSVILLE OK 24399004193993061169342 | Debit | -$6.51 | $38.25 |
| 07/14/2014 | CHECKCARD 0710 FASTRACK    BARNSDALL    OK 24427334192710009318411 | Debit | -$5.24 | $44.76 |
| 07/09/2014 | Counter Credit | Deposit | $50.00 | $50.00 |

Statement Period as of 07/09/2014

**\*\*\*No More Activity For This Account\*\*\***

For additional information or service, please contact the Customer Service Center at  1-800-432-1000

\* =  Item(s) included in Previous Statement(s).

NOK

**\*\*\*\* \*\*\*\* 7476**

Page 5

# Bank of America

BANK OF AMERICA, N.A. (THE "BANK")



LISA J HOLDEN

BOFA CORE CHECKING

**** **** 3543

Last Posting Date 11/12/2014          Date/Time Printed 11/13/2014 12:32 PM EST

## Since Last Statement Summary

| | | | |
|---|---|---|---|
| Last Statement Date 10/22/2014 | | | |
| Balance Last Statement ($) | | | |
| Deposits/Credits (+) | # 1 | $12.00 | Holds (-) |
| Withdrawals/Debits (-) | # 0 | $0.00 | Pending Credits (+) |
| Available Balance ($) | | $0.00 | |

Some of the information was not available when this page was printed. Please ask your Bank of America banker to assist you
Balance Last Statement, Deposits/Credits, Withdrawals/Debits may not total to Available Balance.

| Date | Description | | Type | Amount | Available Balance |
|---|---|---|---|---|---|
| 10/17/2014 | FORCE CLOSED ACCOUNT | FDES NMO 0003016 002757 | Credit | $12.00 | $0.00 |

Statement Period as of 10/17/2014

-----No posted transactions in this statement period-----

Statement Period as of 09/16/2014

| | | | | | |
|---|---|---|---|---|---|
| 08/26/2014 | RETURNED ITEM CHARGEBACK FEE | | Fee | -$12.00 | -$12.00 |
| 08/26/2014 | RETURN ITEM CHARGEBACK | | Debit | -$850.00 | $0.00 |
| 08/25/2014 | BKOFAMERICA MOBILE 08/25 3200047188 DEPOSIT | *MOBILE    OK | Deposit | $850.00 | $850.00 |

| Date | Description | Type | Amount | Available Balance |
|------|-------------|------|--------|-------------------|

Statement Period as of 08/22/2014

***No More Activity For This Account***

For additional information or service, please contact the Customer Service Center at 1-800-432-1000

* = Item(s) included in Previous Statement(s).

NOK

**** **** 3543

Page 2

LISA J HOLDEN

TULSA, OK 74127-8130

2010

39-1/1030 OK
8037

8-25-2014

Date

Pay to the
Order of _Lisa Holden_

$ 850.00

_Eight hundred fifty & no/100_ Dollars

**Bank of America**

ACH R/T 103000017

For _____

⑈103000017⑈ 7476⑈ 2010



## Personal

| **Name:** Lisa Jeanine Findley | **Client ID:** 5872 | **Assigned Officer:** | Livingston, Alton |

## Residence

**Primary:** _____    Tulsa      OK, 74127      6/6/2014
      (No. And Street)     (City)     (State, Zip)     (Start Date)

Private Residence      Renter      None
(Residence Type)     (Occupancy Type)     (Residential Hazards)

**Person/s Also Living At This Address:**

| Name | Relationship | Criminal History? | Description |
|------|--------------|-------------------|-------------|
| Moss, Mark | Roommate | ☐ | |
| . | | ☐ | |

**Mailing:** _____    Tulsa      OK, 74107
      (No. And Street)     (City)     (State, Zip)     (c/o)

☐ Is this is a residence?

(Primary Owner)      (Relationship)      (Describe)

**Contact:**    PhoneNumber      Type
           918-760-0669      Phone Mobile

lisaholden405@yahoo.com
(Email Address)

## Vehicles

**a.**    2005      CHRYSLER      PT CRUISER      white
     (Year)     (Make)     (Model)     (Color)

(License/Tag/Reg. Number)      (Owner)      (Mileage)      (Purchase Date)

(Total Cost)      (Method of Payment)      (Down Payment)      (Monthly Payment)

## Vehicles

**b.**    _____      CHRYSLER      PT CRUISER
     (Year)     (Make)     (Model)     (Color)

(License/Tag/Reg. Number)      (Owner)      (Mileage)      (Purchase Date)

$0.00                           $0.00      $0.00
(Total Cost)      (Method of Payment)      (Down Payment)      (Monthly Payment)

## Post Office Box

☐ Post Office box

(PostOffice Location)      (Address)      (Box #)

☐ Safety Deposit box

(SafetyBox Location)      (Address)      (Box #)

☐ Storage Space

(StorageSpace Location)      (Address)      (StorageSpace #)

## Employment

**a.**

| self | | | |
|---|---|---|---|
| (Employer Name) | (Employer Phone) | (Supervisor) | (Supervisor Phone) |

| | tulsa | OK, | |
|---|---|---|---|
| (No. and Street) | (City) | (State, Zip) | |

| welding | 0 | | |
|---|---|---|---|
| (Position) | (Days Of Work Missed this Month) | (Reason Missed Work) | |

| $120.00 | | 50.00 | 07/08/2014 |
|---|---|---|---|
| (Gross Monthly Income) | (Daily Schedule) | (Hours Per Week) | (Start Date) |

☑ Supervisor is aware of the client's federal conviction

☐ Self-employed

## Employment

**b.**

| Morton's Excavating | 918-486-4918 | | |
|---|---|---|---|
| (Employer Name) | (Employer Phone) | (Supervisor) | (Supervisor Phone) |

| 278th East Ave, | Coweta | OK, 74429 | |
|---|---|---|---|
| (No. and Street) | (City) | (State, Zip) | |

| | 0 | | |
|---|---|---|---|
| (Position) | (Days Of Work Missed this Month) | (Reason Missed Work) | |

| $1,950.00 | | 45.00 | 4/23/2013 |
|---|---|---|---|
| (Gross Monthly Income) | (Daily Schedule) | (Hours Per Week) | (Start Date) |

☐ Supervisor is aware of the client's federal conviction

☐ Self-employed

## Monthly Financial Statement

### Court Ordered Obligations :

**a.**

| $100.00 | | | |
|---|---|---|---|
| (Restitution) | (Fines) | (Special Assessment) | (Treatment Co-pay) |

| | | | |
|---|---|---|---|
| (Electronic Monitoring Costs) | | | |

### Current Monthly Expenses:

**a.**

| | | | $100.00 |
|---|---|---|---|
| (Rent/Mortgage) | (Transportation) | (Grocery) | (Utilities) |

| $85.00 | | $100.00 | |
|---|---|---|---|
| (Telephone) | (Medical/Insurance) | (Credit Card/Loans) | |

| $65.00 | $50.00 | | |
|---|---|---|---|
| (Other) | (Other2) | (Other3) | |

**Expenditures over $500 :**

## New Criminal Charges

Was arrested or named as a defendant: No

## Law Enforcement Contact

Was stopped by Law Enforcement: No

People in household arrested or questioned: No

## Criminal Activities in the past month

Pending charges were disposed of: No

Had contact with people with a criminal record: No

## Firearms or Drugs Issues

Had access to firearms: No

Used or possessed illegal drugs: No

## Travel

Traveled outside of district: No

Treatment Sessions Attended/Missed:

| a. | TULSA COUNSELING SERVICES - Individual Mental Health Counseling | | | |
|---|---|---|---|---|
| | (Provider) | (Sessions Attended) | (Sessions Missed) | (Reason for Missed Session) |

| I certify that all answers are complete and correct | I Agree |
|---|---|
| Internet | Reported on 8/4/2014 at 10:01:30 AM |
| | Location: Internet - 10.164.156.146 |

| Lisa Jeanine Findley | Authenticated by Password |
|---|---|



**Personal**

| **Name:** Lisa Jeanine Findley | Client ID: 5872 | **Assigned Officer:** Livingston, Alton |

**Residence**

Primary: _____
(No. And Street)

Tulsa
(City)

OK, 74127
(State, Zip)

6/6/2014
(Start Date)

Private Residence
(Residence Type)

Renter
(Occupancy Type)

None
(Residential Hazards)

**Person/s Also Living At This Address:**

| Name | Relationship | Criminal History? | Description |
|------|--------------|-------------------|-------------|
| Moss, Mark | Roommate | ☐ | |
| | | ☐ | |

Mailing : _____
(No. And Street)

☐ Is this is a residence?

Tulsa
(City)

OK, 74107
(State, Zip)

(c/o)

_____
(Primary Owner)

(Relationship)

(Describe)

**Contact:** PhoneNumber
918-760-0869

Type
Phone Mobile

lisaholden405@yahoo.com
(Email Address)

**Vehicles**

a.
2005
(Year)

CHRYSLER
(Make)

PT CRUISER
(Model)

white
(Color)

929dqg
(License/Tag/Reg. Number)

(Owner)

(Mileage)

(Purchase Date)

(Total Cost)

(Method of Payment)

(Down Payment)

(Monthly Payment)

**Vehicles**

b.
(Year)

CHRYSLER
(Make)

PT CRUISER
(Model)

(Color)

(License/Tag/Reg. Number)

(Owner)

(Mileage)

(Purchase Date)

$0.00
(Total Cost)

(Method of Payment)

$0.00
(Down Payment)

$0.00
(Monthly Payment)

**Vehicles**

c.
2005
(Year)

CHRYSLER
(Make)

PT CRUISER
(Model)

white
(Color)

(License/Tag/Reg. Number)

(Owner)

(Mileage)

(Purchase Date)

$0.00
(Total Cost)

(Method of Payment)

$0.00
(Down Payment)

$0.00
(Monthly Payment)

**Post Office Box**

☐ Post Office box

|                          |          |                |
|--------------------------|----------|----------------|
| (PostOffice Location)    | (Address) | (Box #)       |

☐ Safety Deposit box

|                          |          |                |
|--------------------------|----------|----------------|
| (SafetyBox Location)     | (Address) | (Box #)       |

☐ Storage Space

|                          |          |                    |
|--------------------------|----------|--------------------|
| (StorageSpace Location)  | (Address) | (StorageSpace #)  |

## Employment

**a.** Self- welder

| (Employer Name) | (Employer Phone) | (Supervisor) | (Supervisor Phone) |
|-----------------|------------------|--------------|--------------------|

| | Tulsa | OK, | |
|---|---|---|---|
| (No. and Street) | (City) | (State, Zip) | |

| | 0 | | |
|---|---|---|---|
| (Position) | (Days Of Work Missed this Month) | (Reason Missed Work) | |

| $1,733.33 | | 40.00 | 7/8/2014 |
|---|---|---|---|
| (Gross Monthly Income) | (Daily Schedule) | (Hours Per Week) | (Start Date) |

☐ Supervisor is aware of the client's federal conviction

☐ Self-employed

## Monthly Financial Statement

### Current Monthly Expenses:

**a.**

| $65.00 | $100.00 | $50.00 | $100.00 |
|---|---|---|---|
| (Rent/Mortgage) | (Transportation) | (Grocery) | (Utilities) |

| | $85.00 | | |
|---|---|---|---|
| (Telephone) | (Medical/Insurance) | (Credit Card/Loans) | |

| | | | |
|---|---|---|---|
| (Other) | (Other2) | (Other3) | |

Expenditures over $500 :

## New Criminal Charges

Was arrested or named as a defendant: No

## Law Enforcement Contact

Was stopped by Law Enforcement: No

People in household arrested or questioned: No

## Criminal Activities in the past month

Pending charges were disposed of: No

Had contact with people with a criminal record: No

## Firearms or Drugs Issues

Had access to firearms: No

Used or possessed illegal drugs: No

## Travel

Traveled outside of district: No

### Treatment Sessions Attended/Missed:

**a.** TULSA COUNSELING
SERVICES - Individual
Mental Health Counseling

| 2 | | |
|---|---|---|
| (Provider) | (Sessions Attended) | (Sessions Missed) | (Reason for Missed Session) |

| I certify that all answers are complete and correct | I Agree |
|---|---|
| **Internet** | Reported on 9/5/2014 at 2:18:28 PM |

| Lisa Jeanine Findley | Authenticated by Password |
|---|---|

**Personal**

Name: Lisa Jeanine Findley | Client ID: 5872 | Assigned Officer: Livingston, Alton

**Residence**

Primary: _____ | Tulsa | OK, 74127 | 6/6/2014
(No. And Street) | (City) | (State, Zip) | (Start Date)

Private Residence | Renter | None
(Residence Type) | (Occupancy Type) | (Residential Hazards)

Person/s Also Living At This Address:

| Name | Relationship | Criminal History? | Description |
|---|---|---|---|
| Moss, Mark | Roommate | ☐ | |
| | | ☐ | |

Mailing : _____ | Tulsa | OK, 74107 | _____
(No. And Street) | (City) | (State, Zip) | (c/o)

☐ Is this is a residence?

_____ | _____ | _____
(Primary Owner) | (Relationship) | (Describe)

Contact: | PhoneNumber | Type
| 918-760-0869 | Phone Mobile

lisaholden405@yahoo.com
(Email Address)

**Vehicles**

a. | 2005 | CHRYSLER | PT CRUISER | white
| (Year) | (Make) | (Model) | (Color)

929dqg
(License/Tag/Reg. Number) | (Owner) | (Mileage) | (Purchase Date)

$0.00 | | $0.00 | $0.00
(Total Cost) | (Method of Payment) | (Down Payment) | (Monthly Payment)

**Post Office Box**

☐ Post Office box

(PostOffice Location) | (Address) | (Box #)

☐ Safety Deposit box

(SafetyBox Location) | (Address) | (Box #)

☐ Storage Space

(StorageSpace Location) | (Address) | (StorageSpace #)

**Employment**

a. | Self- welder
| (Employer Name) | (Employer Phone) | (Supervisor) | (Supervisor Phone)

_____ | Tulsa | OK,
(No. and Street) | (City) | (State, Zip)

0
(Position) | (Days Of Work Missed this Month) | (Reason Missed Work)

| $1,733.33 | | 40.00 | 7/8/2014 |
|---|---|---|---|
| (Gross Monthly Income) | (Daily Schedule) | (Hours Per Week) | (Start Date) |

☐ Supervisor is aware of the client's federal conviction

☐ Self-employed

## Monthly Financial Statement

### Court Ordered Obligations :

| a. | $180.00 | | | |
|---|---|---|---|---|
| | (Restitution) | (Fines) | (Special Assessment) | (Treatment Co-pay) |

| | | | | |
|---|---|---|---|---|
| | (Electronic Monitoring Costs) | | | |

### Current Monthly Expenses:

| a. | | $70.00 | $100.00 | |
|---|---|---|---|---|
| | (Rent/Mortgage) | (Transportation) | (Grocery) | (Utilities) |

| | $65.00 | $100.00 | $50.00 | |
|---|---|---|---|---|
| | (Telephone) | (Medical/Insurance) | (Credit Card/Loans) | |

| | $100.00 | | $85.00 | |
|---|---|---|---|---|
| | (Other) | (Other2) | (Other3) | |

### Expenditures over $500 :

## New Criminal Charges

Was arrested or named as a defendant: No

## Law Enforcement Contact

Was stopped by Law Enforcement: No

People in household arrested or questioned: No

## Criminal Activities in the past month

Pending charges were disposed of: Yes

| a. | 09/11/2014 | pawnee | fines | paid in full |
|---|---|---|---|---|
| | (Date) | (Court) | (Charge) | (Disposition) |

Had contact with people with a criminal record: No

## Firearms or Drugs Issues

Had access to firearms: No

Used or possessed illegal drugs: No

## Travel

Traveled outside of district: No

### Treatment Sessions Attended/Missed:

| a. | TULSA COUNSELING SERVICES - Individual Mental Health Counseling | 2 | | |
|---|---|---|---|---|
| | (Provider) | (Sessions Attended) | (Sessions Missed) | (Reason for Missed Session) |

| I certify that all answers are complete and correct | I Agree |
|---|---|
| Internet | Reported on 10/2/2014 at 1:53:54 PM |
| | Location: Internet - 166.137.146.181 |

| Lisa Jeanine Findley | Authenticated by Password |

# U.S. Probation Office

## Monthly Supervision Report for the month of October 2014

**Personal**

**Name:** Lisa Jeanine Findley    **Client ID:** 5872    **Assigned Officer:** Livingston, Alton

**Residence**

Primary:

| | Tulsa | OK, 74137 | 10/26/2014 |
|---|---|---|---|
| (No. And Street) | (City) | (State, Zip) | (Start Date) |

| Private Residence | Renter | None | |
|---|---|---|---|
| (Residence Type) | (Occupancy Type) | (Residential Hazards) | |

Person/s Also Living At This Address:

| Name | Relationship | Criminal History? | Description |
|---|---|---|---|
| Taylor, Micheal | Roommate | ☐ ☐ | |

Mailing :

| | Tulsa | OK, 74107 | |
|---|---|---|---|
| (No. And Street) | (City) | (State, Zip) | (c/o) |

☐ Is this is a residence?

| | | | |
|---|---|---|---|
| (Primary Owner) | (Relationship) | (Describe) | |

Contact:

| PhoneNumber | Type |
|---|---|
| 918-760-0510 | Phone Mobile |

lisaholden405@yahoo.com
(Email Address)

**Vehicles**

a.

| 2005 | CHRYSLER | PT CRUISER | white |
|---|---|---|---|
| (Year) | (Make) | (Model) | (Color) |

| 929dqg | | | |
|---|---|---|---|
| (License/Tag/Reg. Number) | (Owner) | (Mileage) | (Purchase Date) |

| $0.00 | | $0.00 | $0.00 |
|---|---|---|---|
| (Total Cost) | (Method of Payment) | (Down Payment) | (Monthly Payment) |

**Vehicles**

b.

| | CHRYSLER | PT CRUISER | |
|---|---|---|---|
| (Year) | (Make) | (Model) | (Color) |

| | | | |
|---|---|---|---|
| (License/Tag/Reg. Number) | (Owner) | (Mileage) | (Purchase Date) |

| | | | |
|---|---|---|---|
| (Total Cost) | (Method of Payment) | (Down Payment) | (Monthly Payment) |

**Vehicles**

c.

| 2005 | CHRYSLER | PT CRUISER | white |
|---|---|---|---|
| (Year) | (Make) | (Model) | (Color) |

| | | | |
|---|---|---|---|
| (License/Tag/Reg. Number) | (Owner) | (Mileage) | (Purchase Date) |

| | | | |
|---|---|---|---|
| (Total Cost) | (Method of Payment) | (Down Payment) | (Monthly Payment) |

## Post Office Box

☐ Post Office box

| (PostOffice Location) | (Address) | (Box #) |

☐ Safety Deposit box

| (SafetyBox Location) | (Address) | (Box #) |

☐ Storage Space

| (StorageSpace Location) | (Address) | (StorageSpace #) |

## Employment

a.

| Dollar Tree | 918-296-9105 | | |
|---|---|---|---|
| (Employer Name) | (Employer Phone) | (Supervisor) | (Supervisor Phone) |

| 9591 Riverside Parkway, | Tulsa | OK, 74137 | |
|---|---|---|---|
| (No. and Street) | (City) | (State, Zip) | |

| | 0 | | |
|---|---|---|---|
| (Position) | (Days Of Work Missed this Month) | (Reason Missed Work) | |

| $1,170.00 | | 30.00 | 10/28/2014 |
|---|---|---|---|
| (Gross Monthly Income) | (Daily Schedule) | (Hours Per Week) | (Start Date) |

☐ Supervisor is aware of the client's federal conviction

☐ Self-employed

## Monthly Financial Statement

### Current Monthly Expenses:

a.

| $70.00 | $100.00 | |
|---|---|---|
| (Rent/Mortgage) | (Transportation) | (Grocery) | (Utilities) |

| $65.00 | $50.00 | $100.00 |
|---|---|---|
| (Telephone) | (Medical/Insurance) | (Credit Card/Loans) |

| $85.00 | | $100.00 |
|---|---|---|
| (Other) | (Other2) | (Other3) |

### Expenditures over $500 :

## New Criminal Charges

Was arrested or named as a defendant: No

## Law Enforcement Contact

Was stopped by Law Enforcement: No

People in household arrested or questioned: No

## Criminal Activities in the past month

Pending charges were disposed of: No

Had contact with people with a criminal record: No

## Firearms or Drugs Issues

Had access to firearms: No

Used or possessed illegal drugs: No

## Travel

Traveled outside of district: No

### Treatment Sessions Attended/Missed:

a.  **TULSA COUNSELING
SERVICES - Individual
Mental Health Counseling**

| (Provider) | 1 | 1 | no transportation |
|---|---|---|---|
| | (Sessions Attended) | (Sessions Missed) | (Reason for Missed Session) |

| I certify that all answers are complete and correct | I Agree |
|---|---|
| Internet | Reported on 11/5/2014 at 7:45:42 AM |
| | Location: Internet - 98.191.91.187 |

| | |
|---|---|
| Lisa Jeanine Findley | **Authenticated by Password** |

 Supervision Report for October 2014



51% complete

# Please update **Financial Account** information for accounts you control

**Owner (s)** **Account Type Bank/Institution Name Account Number Balance**        Add New

All Accounts should be listed, if any are missing they should be added.

☐ Discuss with officer later        Back        Continue



# Supervision Report for October 2014



Please update **Financial Account** information for accounts you control

Owner(s): _____

Account Type: _____

Bank/Institution Name: _____

Account Number: _____

Balance: _____

Cancel Changes | Save Changes